## GREAT LAKES PIPE LINE CO. v. OKLAHOMA TAX COMMISSION.

No. 33972.   April 24, 1951.

Rehearing Denied May 22, 1951.

*231 P. 2d 655.*

Monnet, Hayes & Brown, Oklahoma City, and Blackmar, Newkirk, Eager, Swanson & Midgley, Kansas City, Mo., for plaintiff in error.

R. F. Barry, W. F. Speakman, and W. J. Armstrong, Oklahoma City, for defendant in error.

HALLEY, J. This is an appeal by the Great Lakes Pipe Line Company, a Delaware corporation, herein referred to as "protestant", from an order of the Oklahoma Tax Commission, herein referred to as "Commission", assessing corporation license tax against protestant for the fiscal years 1947-48 and 1948-49. The assessment protested was made under the Oklahoma Corporation License Law, enacted in 1941 and appearing as sections 634-643, Title 68, O.S. 1941. The tax is imposed "as a condition of existing or doing or attempting to do business in this state . . ." and is measured by the amount of the capital of the corporation "used, invested, or employed" in Oklahoma, and is applicable to both domestic and foreign corporations that have domesticated in Oklahoma.

Protestant contends that it is not liable for this tax because: (1) the tax is solely on the privilege of existing or doing· or attempting to do business in Oklahoma by corporations engaged in intrastate business; (2) the protestant

is engaged only in interstate commerce, and such privilege is derived from the Constitution of the United States and cannot be taxed by the State of Oklahoma; (3) the Oklahoma statutes on corporation license taxes have not been construed as applying to foreign corporations engaged only in interstate commerce; (4) protestant enjoys the "privilege of existing" from the State of Delaware, and not from Oklahoma; and (5) protestant carries on no operations in Oklahoma except such as constitute interstate commerce.

The case was heard and is submitted on a stipulation of facts. The essential facts stipulated are as follows:

Upon demand by the Commission, protestant filed a license tax return for the two years mentioned, paid the taxes under protest, and received corporation licenses to do business in Oklahoma, the taxes paid being held in suspense.

On July 17, 1930, protestant was incorporated under the laws of the State of Delaware. On July 30, 1930, it qualified to do business in Oklahoma, and on August 11, 1930, it sought and was granted the right of eminent domain in Oklahoma, and thereafter filed a corporation license tax return and paid a license tax up to July 1, 1947.

During the two years in controversy, protestant's main office and place of business was in Kansas City, Missouri. It was engaged in transportation of refined petroleum products as a common carrier in interstate commerce. It neither produced nor refined any petroleum, and it owned none of the products transported via its lines. It was subject to and complied with the Interstate Commerce Act.

Protestant received refined petroleum products from refineries at several points in northeastern Oklahoma, and from points in Kansas, at which points it operated tanks wherein products to be transported were accumulated for efficient transportation, but not for storage, and owned lines connecting such tanks with its pipe line, through which products were transported northward to points in several states.

No deliveries of any products were made in Oklahoma, and no intrastate transportation was carried on.

Protestant owns and operates about 305 miles of trunk pipe lines and rights of way therefor in Oklahoma, extending through nine counties and across state highways, but has never transported products from one point in Oklahoma for delivery at another point in Oklahoma, or from any point outside Oklahoma through this state for delivery within this state.

It operates pump stations in Oklahoma to move products through its lines. It leased a building at Pawhuska, Oklahoma, for storage of supplies used in its Oklahoma operations, and owned one small building on the site of a pumping station at Tulsa, Oklahoma, which was used for storing pipe and other supplies used in the operation of its interstate transportation system. It owned several parcels of real estate in Oklahoma and many miles of right of way easement. At Barnsdall it owned three cottages, two of which were rented to its employees there for $15 per month.

As a necessary adjunct of its transportation system, protestant maintains in Oklahoma a communications system consisting of several miles of poles and wires, but it is not in the telegraph or telephone business. It rents pole space and attachments from other concerns and leases pole attachment space on its poles to several other concerns. It has 78 employees in Oklahoma. They live in various counties wherein it operates its pipe line. It purchases pumps, fuel, and other supplies in Oklahoma, which are used in its Oklahoma operations, but all for transportation from Oklahoma points to points in other states. All contracts for transportation are executed in Kansas City, and all movements of products from Oklahoma are directed from that point.

Since it qualified to do business in Oklahoma, protestant has exercised its right of eminent domain and is now using some of the properties thus acquired, and has instituted and defended "actions in the courts of Oklahoma." It has paid ad valorem taxes assessed against its properties in Oklahoma, and also has paid income taxes to the State of Oklahoma.

It is first contended by protestant that the Oklahoma license tax is a tax solely on the privilege of existing or doing business, or attempting to do business, in Oklahoma by foreign corporations. In its fourth proposition it denies that it enjoyed the "privilege of existing," as that phrase is used in the Oklahoma Corporation License Statutes, and we shall discuss these two propositions together.

Section 635, Title 68, O.S. 1941, provides in part as follows:

"(1) The following corporations and organizations, as a condition of existing or doing or attempting to do business in this state by virtue of a charter, certificate of incorporation or other instrument, shall annually procure from the Oklahoma Tax Commission a license authorizing the doing of business in this state;

"(2) Every corporation organized under the laws of this state, or qualified to do, or doing business in Oklahoma, in a corporate or organized capacity by virtue of creation or organization under the laws of this or any other state. . . ."

We think it clearly was the intention of the Legislature that the tax be imposed on the capital both of domestic corporations and of such foreign corporations as chose to qualify in this state. Had the intention been otherwise, then the tax would have been imposed on the authorized capital stock, or by some other method than that of the capital "used, invested, or employed" in this state. Protestant exercises certain corporate functions within the state, and enjoys certain privileges here.

The first subsection of section 636, Title 68, O.S. 1941, provides in part as follows:

"Each corporation, association or organization required under Section 2 to procure an annual license shall, for the privilege of existing as such corporation, association or organization, or for the privilege of doing business, during each July 1st to succeeding June 30th fiscal year, on or before the 31st day of August of such fiscal year, pay to the Oklahoma Tax Commission for such license and privilege a tax equal to one dollar and twenty-five cents ($1.25) for each one thousand dollars ($1,000.00) or portion thereof, of its capital used, invested, or employed in Oklahoma . . . ."

In Southern Natural Gas Corp. v. Alabama, 301 U.S. 148, 57 S. Ct. 696, a corporation was organized under the laws of Delaware but had qualified to do business in Alabama. It was engaged in the business of transporting natural gas by pipe line. The major portion of its business was interstate, but a very small portion of intrastate business was transacted. The Alabama statute then in effect, and quoted at p. 149 of the U.S. Reports, is as follows:

"That every corporation organized under the laws of any other state, nation, or territory, and doing business in this state, except strictly benevolent, educational or religious corporations, shall pay annually to the State an annual franchise tax of Two Dollars ($2.00) on each One Thousand Dollars of the actual amount of capital employed in this state."

The Supreme Court of Alabama construed the statute as imposing a tax "on foreign corporations as a prerogative to the right of exercise of its corporate functions" in Alabama, and that it was not a tax on business, but was laid "on the exercise of corporate functions, or on the privilege of exercising corporate functions, within the state, and its employment of its capital in Alabama." In the body of the opinion, the court said:

"In the instant case the Supreme Court of the State has reviewed its

rulings and has expounded the meaning of the statute. The state court holds that the tax is a franchise tax . . . levied 'on foreign corporations as a prerogative to the right of exericse of its corporate functions in the state.' It 'is not on any basis a tax on business' but is laid 'on the exercise of corporate functions, or on the privilege of exercising corporate functions within the state and its employment of its capital in Alabama.'

"By compliance with the statute appellant obtained the privilege of engaging within the state in any of the activities which its charter authorized."

In Memphis Natural Gas Co. v. Stone, 335 U. S. 80, 68 S. Ct. 1475, the court had under consideration a license tax imposed by the State of Mississippi on Memphis Natural Gas Company, which operated a pipe line for the transportation of gas through a portion of the State of Mississippi, but did no business in that state other than such as was necessary for carrying on its interstate business. The Supreme Court of Mississippi held that "the local activities in maintaining, keeping in repair, and otherwise in manning the facilities of the system" were sufficient to justify the tax. In the opinion of the Supreme Court of the United States, affirming the decision of the Mississippi Supreme Court, it was said:

"The Mississippi excise has no more effect upon the commerce than any of the instances just recited. The events giving rise to this tax were no more essential to the interstate commerce than those just mentioned or ad valorem taxes. We think that the State is within its constitutional rights in exacting compensation under this statute for the protection it affords the activities within its borders. Of course, the interstate commerce could not be conducted without these local activities. But that fact is not conclusive. These are events apart from the flow of commerce. This is a tax on activities for which the state, not the United States, gives protection, and the state is entitled to compensation when its tax cannot be said to be an unreasonable burden or a toll on the interstate business."

While protestant is a Delaware corporation by virtue of having been created as a legal entity under the laws of that state, and certainly owes its right to exist as a corporation to the State of Delaware, we cannot agree that it may not be taxed in Oklahoma for its right to exist in Oklahoma for the purpose of exercising its corporate functions, and where it enjoys the protection of state laws and the privilege of existing and doing business, after domesticating in Oklahoma and agreeing to be bound by its laws. It has exercised the right of eminent domain and has used Oklahoma highways, and has invested a portion of its capital in Oklahoma.

Protestant relies upon the decision in Ozark Pipe Line Co. v. Monier, 266 U.S. 555, 45 S. Ct. 184, in support of its proposition that since the privilege of engaging in interstate commerce is derived from the Constitution of the United States, the state cannot exact a tax for such privilege when the only business done within the state is interstate commerce, or such matters as are necessary and incident to carrying on the business of interstate commerce. In the Ozark case it was held that the State of Missouri could not tax the privilege of transporting oil through that state by pipe line. It neither received nor discharged oil within the state. The Ozark case was decided in 1925. The Missouri tax statute required every corporation not organized under the laws of that state but engaged in business therein to pay an annual franchise tax equal to one per cent of the par value of its capital stock or surplus employed in business in the state. The tax was the same for domestic corporations. The court held that the power to tax depends upon what was done within a state, and not what might have been done. The license issued by the State of Missouri authorized Ozark to engage "exclusively in

the business of transporting crude petroleum by pipeline." It appears that it later secured authority to operate a system of telephone lines. It maintained pump stations within the State of Missouri and exercised the right of eminent domain. The court held that the tax was invalid upon the theory that it was a burden upon interstate commerce. We think that this case is clearly distinguishable from the one at bar in that Great Lakes definitely engaged in intrastate commerce during the period for which it was taxed, and the Oklahoma statute taxes the right to exist as a corporation in Oklahoma, which the Missouri statute did not do; and the intrastate activities of the protestant are of more importance in this case.

Protestant urges that the ruling of the court in the Ozark case has not been disturbed by later decisions of the United States Supreme Court, while the Commission contends that the later decisions show clearly that the United States Supreme Court has changed its view somewhat with reference to permitting states to tax incidents of interstate commerce. In the Memphis case, supra, the court referred to the Ozark case, supra, and stated that if "it was intended to say such in-the-state activities as there described could not be taxed, we disagree with that conclusion." In Western Livestock Co. v. Bureau of Revenue, 303 U.S. 250, 58 S. Ct. 546, the court said:

"It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. 'Even interstate business must pay its way.' . . . . (Citing cases.)"

We think the Ozark case is so different on the facts from this case that it is not authority here.

In Interstate Oil Pipe Line Corp. v. Stone, decided by the United States Supreme Court in 1949 and reported in 337 U. S. 662, the court had under consideration a tax levied by the State of Mississippi against Interstate, measured by receipts from the transportation of oil from lease tanks to loading racks within that state. It appears that oil was pumped from lease tanks to loading racks near a railway, where it was then loaded into railroad tank cars. If cars were not available, the oil was stored, but never for longer than a week. The Supreme Court of Mississippi upheld this tax. The pipe line company was organized in Delaware and had qualified to do business in Mississippi. In measuring the tax there was exempted such income as was derived from business in interstate commerce. The decision of the Mississippi Supreme Court was affirmed upon the theory that the tax was based upon the privilege of operating the pipe line system within the state, and not upon "local activities of maintaining, keeping in repair, and otherwise in manning the facilities," as the tax was levied in Memphis Natural Gas Co. v. Stone, supra.

In Interstate Oil Pipe Line Corp. v. Stone, supra, the court clearly approved the local-incident theory laid down in the Memphis case, and said:

"We do not pause to consider whether the business of operating the intrastate pipe lines is interstate commerce, for, even if we assume that it is, Mississippi has power to impose the tax involved in this case. Further, we do not find it necessary to dispute that the Supreme Court of Mississippi construed the statute as imposing a tax on the privilege of operating a pipe line wholly within the state, and not a tax solely upon the 'local activities of maintaining, keeping in repair, and otherwise in manning the facilities' situated in Mississippi. Memphis Gas Co. v. Stone, 335 U.S. 80, 92-93, 68 S. Ct. 1475, 1481, 92 L. Ed. 1832; or upon the gross receipt themselves, Central Greyhound Lines v. Mealey, 334 U.S. 653, 68 S. Ct. 1260, 92 L. Ed. 1633. . . .

"Since all the activities upon which the tax is imposed are carried on in Mississippi, there is no due process objection to the tax. The tax does not discriminate against interstate com-

merce in favor of competing intrastate commerce of like character. The nature of the subject of taxation makes apportionment unnecessary; there is no attempt to tax interstate activity carried on outside Mississippi's borders. No other state can repeat the tax. For these reasons the commerce clause does not invalidate this tax."

Protestant claims that such local business as it transacted within the State of Oklahoma was purely incidental to its interstate business of transporting petroleum products from Oklahoma to other states. It was admitted that protestant exercised the right of eminent domain and used the public highways of Oklahoma for its pipe lines. It owned hundreds of miles of rights-of-way and easements, and a number of pump stations, and a telephone system. It is admitted that pole space along its telephone lines was rented to other concerns for a small charge. It owned one small building near Tulsa, in which it stored supplies used in the operation of the pipe line. It owned three small houses at Barnsdall, Oklahoma, two of which were leased to its employees. It purchased fuel for its engines at pump stations, and other necessary supplies for the maintenance of its pipe line facilities, in Oklahoma. While it is true that such business as it transacted within Oklahoma was extremely small as compared to its principal business of transporting petroleum products, it has been held that the amount of local business transacted is immaterial. Southern Natural Gas Corp. v. Alabama, supra. There is no question but that Great Lakes Pipe Line Company exercises a number of corporate functions within the State of Oklahoma, and that protection for the exercise of these functions comes from the State and not from the Federal Government.

The tax here is not claimed to be discriminatory or to abridge the right of engaging in interstate commerce. It is measured by the amount of capital used, invested, or employed in Oklahoma. In our opinion it is a tax levied on a corporation for its right to exist in Oklahoma, and as a prerogative to the right of exercising its corporate functions in this state. It in no way impinges upon the right to engage in interstate commerce.

Our attention has been called to Spector Motor Service, Inc., v. O'Connor, Tax Commissioner of Connecticut, decided by the United States Supreme Court on March 26th of this year in favor of the company. In that case the right to exist was not taxed, but only the privilege of carrying on or doing business in the State of Connecticut, and there was no intrastate business transacted by Spector Motor Service, as it had not qualified to do intrastate business; but Great Lakes Pipe Line is so qualified in Oklahoma.

The order of the Commission is affirmed.

LUTTRELL, V. C. J., and CORN, DAVISON, and JOHNSON, JJ., concur. O'NEAL, J., dissents.