SOUTHWESTERN GAS & ELEC. CO. v. OKLAHOMA TAX COMMISSION.

No. 34143.   Feb. 10, 1953.

*253 P. 2d 549.*

Richard L. Arnold and Arnold & Arnold, Texarkana, Ark., and Lee B. Thompson and McInnis, Thompson & Sullivan, Oklahoma City, for plaintiff in error.

R. F. Barry, W. F. Speakman, and E. J. Armstrong, Oklahoma City, for defendant in error.

JOHNSON, V.C.J. The Southwestern Gas & Electric Company, hereinafter referred to as "protestant", appealed from an order of the Oklahoma Tax Commission, hereinafter referred to as "Commission", assessing income taxes against protestant for the years 1944 to 1947, inclusive, in the amounts set forth in the body of this opinion.

The written stipulation of the parties sets out the facts involved as follows:

The protestant is a Delaware corporation with its principal office in Shreveport, Louisiana, and is domesticated under the laws of Oklahoma and authorized to do business therein.

In 1941 and 1942 protestant built an electric transmission line from Ashdown, Arkansas, to Weleetka, Oklahoma, 164 miles in length, of which 137 miles thereof is in Oklahoma and which the protestant operates and maintains. Maintenance and replacement work on the line for the most part is done by independent contractors, but on occasions and in times of emergency protestant sends its employees into this state to make repairs or patrol the line.

The protestant operated and maintained an inter-connected system of power generating plants, transmission lines and distributing systems for the generation and transmission of electric current which was sold at wholesale and retail outside of Oklahoma. It purchased from the Public Service Company of Oklahoma at Weleetka, Oklahoma, electric current which was transmitted over its transmission line for sale at wholesale and retail in Arkansas, Louisiana and Texas. All current transmitted over the Oklahoma line was purchased from said Public Service Company. From the sale of current in said states the defendant received during the period in controversy net income in excess of $15,000,000. It generated no electricity and made no sales of current in Oklahoma and directly captured no income in said state.

Protestant filed an income tax return for each of the years involved herein with the Commission and therein showed a net loss for each year in excess of $50,000. The Commission declined to accept the returns as filed and proposed the assessment of income taxes for each year, which assessments were based upon net income as allocated to the property and operations of protestant in Oklahoma pursuant to formula set out in §878, Title 68 O.S. 1951 (Oklahoma Income Tax Laws 1935), which formula was the average ratio of three separate factors consisting of property, expense and sales in Oklahoma to property, expense and sales everywhere. The pertinent figures involved in the assessments made by order of the Commission and appealed from herein are these:

| "Year | Loss shown in return | Net Income shown in return | Allocated to Okla. by Comm. | Okla. Tax on allocated net income |
|---|---|---|---|---|
| "1944 | $55,961.79 | $3,963,930.65 | $29,769.84 | $ 758.26 |
| 1945 | 52,422.63 | 3,747,270.08 | 32,550.55 | 858.59 |
| 1946 | 53,200.69 | 3,593,027.88 | 45,709.36 | 1,676.62 |
| 1947 | 54,047.02 | 3,989,097.72 | 22,826.96 | 563.84" |

The only property that protestant owned in Oklahoma was the 137 miles of transmission line and the current transmitted over same. It had no employees, officials or directors residing in Oklahoma, and did no banking business in Oklahoma.

Protestant paid general ad valorem taxes on its transmission line and corporate license taxes imposed on the value of its capital that was here used, invested and employed for years in question.

Monthly bills for current purchases of electric current from the Public Service Company of Oklahoma were mailed to protestant's office in Shreveport, Louisiana, and checks in payment thereof were mailed from that city to the Tulsa, Oklahoma, office of the Public Service Company of Oklahoma.

It was stipulated that if protestant owed income taxes that it was in the amount assessed as above set out.

The above assessments were protested by protestant on the theory that its business in Oklahoma was wholly interstate in character; that it did no intrastate business and captured no gross income in Oklahoma and for such reason the imposition of net income taxes would violate the Commerce Clause and the Due Process Clause of the Federal Constitution.

The business conducted by protestant is obviously unitary in character, which fact is not questioned by protestant. See definition of unitary business, 43 W. & P. Perm. 256, Fleming v. Oklahoma Tax Commission, (C.C.A. Okla.) 157 F. 2d 888, Cert. denied, 329 U.S. 812, 91 L. Ed. 693, 67 S.C. 634. In view of the character of the business and the fact that net income accrued to the business as a whole, the right of Oklahoma as a state of the situs of a unit of the business, to allocate and assign to itself that portion of protestant's net income which is reasonably attributable to protestant's property owned in this state and "process conducted" within its borders would ordinarily be conceded as being free from doubt. Underwood Tpyewriter Co. v. Chamberlain, 254 U.S. 113.

The pertinent portion of the levying, §876 (a), Title 68 O.S. 1951, reads as follows:

"(a) A tax is hereby levied upon every person as defined in Section 874, which tax shall be collected and paid, for each taxable year, upon, and with respect to, the entire net income of such person, which is derived from all property owned and/or business transacted within this State. And a like tax is hereby levied upon every person as defined in Section 874 (b) which tax shall be collected and paid, for each taxable year, upon, and with respect to, the entire net income of such person which is *derived from all property owned partly within and partly without this state and/or business done partly within and partly without this State (commonly known as interstate business) such income derived from property owned partly within and partly without this State and/or business transacted partly within and partly without this State, upon which said tax is hereby levied, to be determined or allocated under the formula or formulae as provided in Section 878*". (Emphasis ours.)

The statute treating with allocating income, §878 (g), Title 68 O.S. 1951, which is referred to in the above quotation, authorizes the use of such a formula as was here used. The protestant in effect concedes such is true for, as has been indicated, it is stipulated that

if it owes any tax it was that produced through an application of the formula.

Section 874 (o), Title 68 O.S. 1951, reads as follows:

"The terms 'transacting business' and 'business transacted' are used herein in their broadest sense. Such terms are hereby declared to include the performance of any act or the carrying on of any activity, either by the principal, agents or any representatives resulting in income to the person, as defined in subsection (b) of this Section, performing such act or carrying on such activity (whether such act or carrying on of any activity results in income directly or in conjunction with 'other acts or activities in part within and in part without Oklahoma). The performance of such an act or the carrying on of such an activity shall, within itself, be sufficient to constitute 'transacting business' or 'business transacted'."

In view of the principles of law laid down in the above-cited decisions of the United States Supreme Court and the wording of the quoted and cited statutes, supra, protestant's position can only be said to have merit if it is based solely on protestant's contention to the effect that the absence of local or intrastate business (other than its domestication owning, operating and maintaining its electrical transmission line in this state) and the absence of the direct capturing of income within this state serves to distinguish this case from those which we have cited.

The protestant, during the years in controversy, was qualified to do business in Oklahoma entitling it to the protection and benefits conferred under its laws as a domesticated foreign corporate unitary business and it carried on in this state a substantial part of its ordinary business of owning transmission lines and transmitting electric current for sale at wholesale and retail. The value of that portion of its line in Oklahoma was approximately $800,000, and while the value of the electric current transmitted in Oklahoma is not shown, it must be assumed that the value thereof was fairly substantial.

In view of the facts, the protestant must be held to have been doing business here. In 20 C.J.S. Corporations, §1829, p. 46, the following rule is stated:

"The general rule is that, when a foreign corporation transacts some substantial part of its ordinary business in a state, continuous in character, it is doing, transacting, carrying on, or engaging in business therein, within the meaning of the statutes under consideration."

If one is engaged exclusively in interstate commerce he is still doing business. Fletcher on Corporations, vol. 18 (Perm. Ed.) §8804, p. 691, reads as follows:

"* * * But a corporation cannot be engaged in the state in interstate commerce, it seems, without also 'doing business' in the state * * *."

See, also, 23 Am. Jur., Foreign Corporations, §377, p. 371.

The United States Supreme Court has not predicated a state's right to allocate and tax the net income of a unitary business on the doing of local or intrastate business within the taxing state. In Butler Bros. v. McColgan, 315 U.S. 501, the court quotes from Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113, as follows:

"* * * that a State in attempting to place upon a business extending into several States 'its fair share of the burden of taxation' is 'faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders.'" (315 U.S. p. 507.)

In International Harvester Co. v. Wisconsin Department of Taxation, 322 U. S. 435, 441, the court said:

"* * * A state may tax such part of the income of a non-resident as is fairly attributable either to property located in the state or to events or transactions which occurring there . . . are within the protection of the state, and entitled to the numerous other benefits which it confers. Compare Schaffer v. Carter, supra, and Travis v. Yale & Towne Mfg.

Co., 252 U.S. 60, 40 S. Ct. 228, 64 L. Ed. 460, and People of State of New York ex rel. Cohn v. Graves, 300 U.S. 308, 57 S. Ct. 466, 81 L. Ed. 666, 108 A.L.R. 721. *And the privilege of receiving dividends derived from corporate activities within the state can have no greater immunity than the privilege of receiving any other income from sources located there.*" (Emphasis ours.)

In sec. 874 (o), supra, it is provided that "the performing of any act or the carrying on of any activity" and "whether such act or * * * activity results in income directly or in conjunction with other acts or activities in part within and in part without Oklahoma," constitutes "transacting business". Under this broad and comprehensive language, protestant was transacting business within the purview of that statute, and, as has been indicated, the Commerce Clause is not held to prohibit the imposition of a net income tax on net income accruing therefrom. This court recognized that such was the law in Rock Island Refining Co. v. Oklahoma Tax Commission, 194 Okla. 349, 147 P. 2d 1000, where we said:

"Net income derived from local sales of products to be transported to the purchasers in interstate commerce constitutes net income derived from business transacted within this state, within the meaning of the Oklahoma Income Tax Law of 1935, art. 6, ch. 66, S.L. 1935, 68 O.S. 1941, sec. 871 et seq., and is subject to taxation thereunder."

The protestant insists, however, that the taxing of net income accruing wholly from interstate commerce is prohibited by the Commerce Clause and the Due Process Clause of the Constitution of the United States. In this connection, the protestant contends that it was engaged exclusively in interstate commerce and asserts that Utah Power & Light Co. v. Pfost, 286 U.S. 165, sustains its contention. In that case it was held that the transmission of electric current from Idaho where generated to another state constituted interstate commerce, but the court also held that the matter of generating the current so transmitted was a local in-

cident that sustained the license tax levied by Idaho that was there involved. On the other hand, the Commission contends that just as the generating of current in Idaho was held to be a local incident, the systematic and continuous purchase of electric current and the taking locally thereof followed by transmission over the line that protestant built, operates and maintains in Oklahoma for such purposes is likewise a local incident. As sustaining its argument the Commission cites the annotated notes beginning at page 1447 of 12 A.L.R. (2); Memphis National Gas Co. v. Stone, 335 U.S. 80; Nippert v. City of Richmond, 327 U.S. 416, 426, and other cases. The Commission contends that cases determining what constitutes "doing business" for jurisdictional purposes apply to tax cases, citing 23 Am. Jur., Foreign Corporations, §362. p. 339.

In our opinion, it is unnecessary to decide whether the protestant was engaged in both intrastate and interstate business because the transaction of intrastate business is not by the authorities considered to be a condition precedent to the imposition of a net income tax. We do wish, however, to emphasize and point out that the United States Supreme Court is at present committed to the proposition that those engaged in interstate commerce should assume "their just share of state tax burdens", McGoldrick v. Berwind-White Coal Mining Co.. 309 U.S. 33, at page 46.

In McGoldrick v. Berwind-White Coal Mining Co., supra, the court said:

"* * * A tax may be levied on net income wholly derived from interstate commerce * * *."

In Memphis Natural Gas Co. v. Beeler, 315 U.S. 649, 656, it was said:

"*In any case even if taxpayer's business were wholly interstate commerce, a nondiscriminatory tax by Tennessee upon the net income of a foreign corporation having a commercial domicile there (citing cases), is not prohibited by the commerce clause on*

*which alone taxpayer relies.* United States Glue Co. v. Oak Creek, 247 U.S. 321, * * *." (Emphasis ours.)

In West Publishing Co. v. McColgan, 27 Cal. 2d 705, 166 P. 2d 861, 864, the court had this to say:

"* * * 'But it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing business. * * * A tax may be levied on net income wholly derived from interstate commerce.' McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 46, 60 S. Ct. 388, 392, 84 L. Ed. 565, 128 A.L.R. 876.

"State power to impose a tax on net income wholly derived from interstate commerce was recently reaffirmed in Memphis Natural Gas Co. v. Beeler, 315 U.S. 649, 656, 62 S. Ct. 857, 86 L. Ed. 1090; see, also, International Harvester Co. v. Wisconsin, 322 U.S. 435, 442, 64 S. Ct. 1060, 88 L. Ed. 1373. *Such power is so well recognized that appeals questioning it are dismissed by the United States Supreme Court for want of a substantial federal question.* Memphis Natural Gas Co. v. State Tax Comm., 323 U.S. 682, 65 S. Ct. 440; Id., Miss., 19 So. 2d 477; Parke Davis & Co. v. Cook, 323 U.S. 681, 65 S. Ct. 436; Id., 198 Ga. 457, 31 S.E. 2d 728, 156 A.L.R. 1360 (Emphasis ours.)

West Publishing Company perfected an appeal to the Supreme Court of the United States, and the opinion of that court, which is reported in 328 U.S. 823, reads as follows:

"June 10, 1946. Per Curiam. *The motion to affirm is granted and the judgment is affirmed.* United States Glue Co. v. Town of Oak Creek, 247 U.S. 321, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748; Interstate Busses Corporation v. Blodgett, 276 U.S. 245, 48 S. Ct. 230, 72 L. Ed. 551; Memphis Natural Gas Co. v. Beeler. 315 U.S. 649, 656, 62 S. Ct. 857, 862, 86 L. Ed. 1090; International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154." (Emphasis ours.)

See, also, State Tax Commission v. Memphis Natural Gas Co., 197 Miss. 583, 19 So. 2d 477, Per Curiam opinion on appeal, 323 U.S. 682.

The fact that protestant captured no gross income within this state is without significance under the authorities. The income taxed in the instant case is held to be that which was in fact earned here because reasonably attributable to protestant's Oklahoma property and its unitary business processes conducted within this state. In Underwood Typewriter Co. v. Chamberlain, supra, 254 U.S. 113, 121, the court said:

"* * * It, therefore, adopted a method of apportionment, which for all that appears in this record, reached, and was meant to reach, only the profits earned within the state * * *."

The substance of the above-quoted rule is found in Butler Bros. v. McColgan, 315 U. S. 501, 506, where it is said:

"We take a different view. We read the statute as calling for a method of allocation which is 'fairly calculated' to assign to California that portion of the net income 'reasonably attributable' to the business done there. * * *."

The annotator's introduction to his annotated notes appearing at pp. 1375 to 1377 of 156 A.L.R. reads:

"A state may impose on foreign corporation doing business therein an income tax on earnings derived from or *attributable to their activities, business, or property within the state.*" (Emphasis ours.)

In Humble Pipe Line Co. v. State, 45 N.M. 29, 109 P. 2d 247, 250, the Supreme Court of New Mexico rejected the contention that protestant makes here and the Supreme Court of Georgia did likewise in State Revenue Commission v. Edgar Bros. Co., 185 Ga. 216, 194 S.E. 505, appeal dismissed, 303 U.S. 626.

As pointed out in Bass, Ratcliff & Gretton v. State Tax Commission, 266 U.S. 271, and Montgomery Ward & Co. v. State Tax Commission, 151 Kan. 159, 98 P. 2d 143, the situs of a sale does not

necessarily fix and determine the source from which net income is derived.

In view of the above authorities, and as already indicated, the transaction of local or intrastate business or the capturing of gross income within this state was not a condition precedent to imposing a tax on protestant's net income.

Protestant now complains of the formula used, which complaint appears to be that the factors of the formula are such that under certain assumed conditions its Oklahoma net income could be distorted but it makes no charge that such is true of the years in controversy. The protestant stipulated that if it owes any income tax to the State of Oklahoma for the years in controversy, its income tax liability is in the amount assessed, and in so stipulating it must be held to have agreed that the formula used did not allocate and apportion to this state a disproportionate part of its net income. It did not, however, in so stipulating, agree that it was, in fact, subject to an income tax. But, if protestant was of the opinion that the formula used distorted its allocable net income, it should have submitted a formula to the Commission that it believed would fairly do so. Butler Bros. v. McColgan, supra; Fleming v. Oklahoma Tax Commission, supra.

In Magnolia Petroleum Co. v. Oklahoma Tax Commission, 190 Okla. 172, 175, 121 P. 2d 1008, the right of a state to allocate to itself a portion of the net income of a unitary business is recognized:

"By a system of indirect allocation the income of a corporation operating as a unit in interstate commerce may be apportioned for tax purposes among the states contributing to the facilities and transactions from which the income arose. Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113, 65 L. Ed. 165. This may be done by a percentage or ratio method as defined in our statute * * *."

which right is at present well established. Butler Bros. v. McColgan, supra, and 27 Am. Jur., Foreign Corporations, §193, p. 416; Fleming v. Oklahoma Tax Commission, supra.

The cases relied upon by protestant are readily distinguishable from the instant case. For instance, Curlee Clothing Co. v. Oklahoma Tax Commission, 180 Okla. 116, 68 P. 2d 834, was a case involving income taxes. Curlee was a foreign corporation that was not qualified to do business in Oklahoma (it asserted that, for such reason, under the facts there presented, Oklahoma did not have jurisdiction of its person) and owned no property within the state, and, therefore, there was no reason for it to share the state's tax burden. Its activities in Oklahoma were limited to soliciting orders for the merchandise that it sold, which orders were accepted outside this state and upon the order being accepted, the merchandise was shipped from outside this state. The facts presented in Ozark Pipe Line Co. v. Monier, 266 U.S. 555, and the other cases involving a license tax are not comparable to those of the instant case, and as pointed out in West Publishing Co. v. McColgan, supra, the United States Supreme Court distinguishes "between a tax which is levied for the privilege of engaging in interstate commerce and a tax which is levied upon the net income from such commerce," and holds that net income tax does not conflict with the Commerce Clause of the Constitution of the United States.

Protestant's contention that the action of the State of Oklahoma in levying an income tax on the net income violates the Due Process Clause is without merit. There is nothing in the record upon which protestant may base its argument that its property rights have been taken away without due process of law. The taxing power exerted by the State of Oklahoma bears fiscal relation to the protection, opportunities and benefits given protestant by the state. Obviously, the substantial privilege of carrying on a substantial por-

tion of its unitary business in Oklahoma clearly supports the tax. State of Wisconsin, v. J. C. Penney Co., 311 U. S. 435. The language used therein is apropos in the case at bar and we quote:

"The constitution is not a formulary. It does not demand of states strict observance of rigid categories nor precision of technical phrasing in their exercise of the most basic power of government, that of taxation. For constitutional purposes the decisive issue turns on the operating incidence of a challenged tax. A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.

"Constitutional provisions are often so glossed over with commentary that imperceptibly we tend to construe the commentary rather than the text. We cannot, however, be too often reminded that the limits on the otherwise autonomous powers of the states are those in the Constitution and not verbal weapons imported into it. 'Taxable event', 'jurisdiction to tax', 'business situs', 'extraterritoriality', are all compendious ways of implying the impotence of state power because state power has nothing on which to operate. These tags are not instruments of adjudication but statements of result in applying the sole constitutional test for a case like the present one. That test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. The substantial privilege of carrying on business in Wisconsin, which has here been given, clearly supports the tax, and the state has not given the less merely because it has conditioned the demand of the exaction upon happenings outside its own borders. The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction."

For the reasons stated, we are of the opinion that the order of the Tax Commission was correct. Therefore, the order is sustained.

HALLEY, C.J., and WELCH, CORN, WILLIAMS, and BLACKBIRD, JJ., concur. DAVISON, ARNOLD, and O'NEAL, JJ., dissent.