LINEAR FILMS, INC. and
Subsidiaries, Appellant,

v.

STATE of Oklahoma, ex rel.,
OKLAHOMA TAX COM-
MISSION, Appellee.

No. 81654.

Court of Appeals of Oklahoma,
Division No. 3.

Feb. 8, 1994.

Rehearing Denied May 10, 1994.

Mark H. Allen, Francis F. Hillsman, Gable & Gotwals, Inc., Tulsa, for appellant.

David Hudson, Gen. Counsel, Robert B. Struble, Asst. Gen. Counsel, Oklahoma Tax Com'n, Oklahoma City, for appellee.

*OPINION*

BAILEY, Judge:

Linear Films, Inc. and subsidiaries (Taxpayer) seek review of an order of the Oklahoma Tax Commission (OTC) denying Taxpayer's application for a refund of corporate income taxes paid. In this appeal, Taxpayer asserts error by OTC in determining Taxpayer's sales of personal property outside of Oklahoma should be included within the Oklahoma tax base, arguing Taxpayer was not doing business outside Oklahoma for purposes of the Oklahoma corporate income tax code.

Briefly, Taxpayer is an Oklahoma corporation. Taxpayer owns and operates two plants—one in Tulsa, the other in Kentucky—for the manufacture and sale of plastic films. Taxpayer engages approximately ten independent contractors who solicit sales on Taxpayer's behalf in states other than Oklahoma.

Taxpayer filed with OTC amended returns with claims for refunds for 1985, 1986, and 1987. OTC denied entitlement to refund. Taxpayer protested the denial, and Taxpayer and OTC agreed to submit the matter for consideration by the Administrative Law Judge based on stipulations and briefs. The Administrative Law Judge issued Findings, Conclusions and Recommendations, denying Taxpayer relief on the grounds Taxpayer was not "doing business" in the states to which Taxpayer shipped its product. Taxpayer appealed to the full Commission which issued its order upholding the decision of the Administrative Law Judge. Taxpayer appeals.

The sole issue presented is whether Taxpayer's activities constituted "doing business" in other states for purposes of 68 O.S. 1991 § 2358(A)(5)(c)(1). That section provides for apportionment of income from sales of tangible personal property in other states in which Taxpayer is not "doing business" to be included as income in the Oklahoma tax

base. The OTC considered the stipulated facts and applicable law, and concluded Taxpayer's activities in other states, i.e., solicitation and sales of tangible personal property, did not constitute "doing business" in those states so that sales delivered in the other states from Oklahoma were subject to Oklahoma income tax as Oklahoma sales.

We have reviewed the record herein and find the order of OTC adopting the Findings, Conclusions and Recommendations of the Administrative Law Judge free of legal error, and the latter, appended hereto, adequately explains its decision. The order of OTC denying Taxpayer's claims for refund is therefore AFFIRMED. Rule 1.202(d), Rules of Appellate Procedure in Civil Cases, 12 O.S.Supp.1991, Ch. 15, App. 2.

HUNTER, P.J., and GARRETT, V.C.J., concur.

### APPENDIX

Before the Administrative
Law Judge of the

Oklahoma Tax Commission

State of Oklahoma

Case No. CR–90–007.

In the Matter of the Income Tax Claim
for Refund of Linear Films, Inc.
and Subsidiaries.

Filed March 26, 1993.

### FINDINGS, CONCLUSIONS AND RECOMMENDATIONS

NOW on this 26th day of March, 1993, the above styled and numbered cause comes on for consideration pursuant to assignment regularly made by the Oklahoma Tax Commission to Melanie K. Parks, Administrative Law Judge. By agreement of the parties, this matter was submitted for a decision without a formal hearing. Protestant, Linear Films, Inc., by and through its attorney, Mark H. Allen, GABLE & GOTWALS, and the Income Tax Division, by and through its representatives, Robert B. Struble, Assistant General Counsel, and Jerri K. Golden, Legal Research Assistant, General Counsel's Office

of the Oklahoma Tax Commission, submitted a Stipulation of Facts and briefs outlining their respective positions, all in accordance with and as permitted by Rule 710:1–5–38, *Oklahoma Administrative Code.*

### FINDINGS OF FACT

The parties stipulate to the following:

1. Taxpayer is an Oklahoma corporation which manufactures and sells plastic films which are used in packaging commercial products. Taxpayer owns and operates two manufacturing plants, one of which is located in Tulsa, Oklahoma, and the other of which is located in Nicholasville, Kentucky. Taxpayer also stores finished product at a warehouse which Taxpayer leases in Charlotte, North Carolina.

2. Except for the Kentucky plant and the North Carolina warehouse, Taxpayer does not now have, (sic) or has it at any time had an office, agency, warehouse or other place of business in a state other than Oklahoma.

3. Throughout the period in question, Taxpayer has made occasional deliveries of products to customers in other states by two trucks which were owned by Taxpayer. The product was delivered throughout the Taxpayer's sales area, which generally encompassed most of the continental United States. Taxpayer does not currently own any vehicles. However, even during the period when the Taxpayer owned the two trucks, 80% to 90% of all product delivered by Taxpayer to its customers was delivered by common or contract carriers. The deliveries made by Taxpayer's trucks in any one state were occasional and infrequent. Further, Taxpayer does not pick up material used in manufacturing or for resale in a state other than Oklahoma by owned vehicles or vehicles leased by the Taxpayer. All raw materials used in Taxpayer's manufacturing process are delivered to Taxpayer's plants by rail.

4. It is possible that Taxpayer picked up damaged or returned merchandise during the period in which it made deliveries by its own trucks. No records are kept which would indicate whether Taxpayer's agents picked up returned merchandise. Any such occurrences would have been extremely rare.

5. No employees of Taxpayer (resident or non-resident) solicit sales, perform services, promote Taxpayer's products or otherwise act on Taxpayer's behalf in states other than where Taxpayer's manufacturing and warehouse operations are conducted (i.e. North Carolina, Kentucky and Oklahoma), except for the occasional and infrequent delivery of products by employees operating Taxpayer's trucks.

6. Throughout the periods in controversy, Taxpayer has engaged approximately ten independent contractors who solicit sales on Taxpayer's behalf in states other than Oklahoma. The sales representatives are independent contractors who call on potential customers to promote Taxpayer's products and who solicit orders from the customers. The sales representatives pay their own expenses and are compensated by commissions on sales. Taxpayer did not have a written agreement with these independent contractors in the years in question. Many of the independent contractors are closely held corporations although a few are sole proprietors. Taxpayer provides these sales representatives with samples of its product. Taxpayer's product is a plastic film used in packaging commercial products, and the samples are rolls of the various types of film which are provided to the sales representatives. The samples are not usable in commercial application. The value of each roll is approximately $5.00, and each representative may have ten to fifteen samples at any given time. When Taxpayer transmits these samples to its representatives, it relinquishes all ownership to the samples. Taxpayer has never sought the return of samples because Taxpayer considers title to the samples to pass to the representative upon delivery. These samples are routinely provided to representatives, customers and distributors, and the cost of shipping the sample often exceeds the value thereof.

7. Some of Taxpayer's sales representatives may have a listing in a telephone directory under Taxpayer's name. This is analogous to manufacturers of other products which may be listed generically in the Yellow Pages, with the specific dealers or represen-tatives described within the listing. Taxpayer did not cause its telephone number to be listed in any telephone or building directory outside of Oklahoma and did not pay for any such listing. The sales representatives may have caused such a listing to be made in order to further their solicitation activities. Further, the sale representatives generally listed their office as a business address and received business calls there, but did not store inventory or receive any office expense reimbursement from the Taxpayer.

8. Taxpayer's sales representatives routinely solicit sales in states other than Oklahoma and maintain an office in their home or elsewhere. Taxpayer's sales representatives make sales calls to solicit business on behalf of Taxpayer at least twice a month in each state in the continental United States.

9. Taxpayer's sales representatives have limited authority and *do not*:

a. Accept or secure deposits or down payments.

b. Check or stock inventories of customers or distributors.

c. Make "on the spot" sales of any items carried by them.

d. Collect installments and/or delinquent accounts.

e. Pick up or replace damaged, obsolete or defective merchandise. However, the sales representative might arrange for the shipping for the return of damaged, obsolete or defective merchandise.

f. Accept or pick up damaged or returned merchandise.

g. Authorize credits, warranty adjustments or repairs. The sales representatives might inspect the goods for warranty protection. The sales representatives would have no authority to authorize credits, warranty adjustments or repairs.

h. Set up merchandising or advertising displays.

i. Handle complaints, (at least to the extent "handle" means to take responsibility with the authority to correct problems). The sales representatives serve as liaisons between Taxpayer and the customers and they may assist the cus-

tomer by giving advice or trouble shooting in an effort to improve the success of their solicitation efforts.

j. Conduct training courses for their customers, agents or distributors. Taxpayer's sales representatives do not conduct training courses but they do help inform the distributors and customers about the various products of Taxpayer as a part of their solicitation efforts.

k. Investigate or approve credit.

l. Approve or reject orders of customers. Orders must be accepted or rejected at Taxpayer's principal office in Oklahoma.

m. Deliver or set up the company's product.

n. Perform any inspections of the company's facilities or products.

o. Arrange cooperative advertising agreements with customers.

p. Negotiate, renew or complete any contracts with customers. Taxpayer's sales representatives will discuss terms with the ultimate customer. All orders must be approved in Taxpayer's principal office in Oklahoma.

q. Supervise or perform installation, service or repair work of Taxpayer's products.

r. Conduct lectures or show films promoting or demonstrating Taxpayer's products or services.

s. Provide sales or service manuals to customers, distributor or agents, but Taxpayer's sales representatives will provide brochures and promotional literature to distributors and customers.

t. Hold meetings or sales seminars.

u. Investigate or recommend potential dealers, agents or distributors of the company, but Taxpayer's sales representatives might recommend various distributors to the customers.

v. Provide design work, product adjustments or technical assistance, but Taxpayer's sales representative might make product recommendations as a part of solicitation and might help a customer place an order for a unique product for the customer's particular needs.

10. Taxpayer's sales representatives may assist or call on a dealer or distributor's customer while accompanied by the dealer or distributor's own employee as a part of the sales representative's general solicitation of business.

11. Neither Taxpayer nor any affiliated company holds title (or has in the past held title) to any tangible property or realty located and/or used in states other than Oklahoma, Kentucky or North Carolina (such as merchandise inventory, motor vehicles, office or industrial equipment, etc.).

12. Neither Taxpayer nor any affiliated company leases or rents (or has in the past leased or rented) any tangible property or realty located and/or used in states other than Oklahoma, Kentucky or North Carolina (such as warehouse space, motor vehicles, office or industrial equipment, etc.).

13. Taxpayer does not now have nor has it ever had consigned inventory in any state.

14. Taxpayer does not (sic) nor has it ever maintained a security interest in any products sold in any state.

15. Taxpayer does not now have nor has it ever had title to goods present on trial or approval.

16. Taxpayer does not have nor has it ever had advertising material in a state other than Oklahoma or Kentucky, which it owns, except Taxpayer provides brochures and sales literature to its sales representatives in other states. Taxpayer considers this material to be owned by the sales representatives.

17. Taxpayer does not do any localized advertising (cooperate or otherwise) in a state other than Oklahoma.

18. Taxpayer does not reserve the right of inspection of the customer's facilities or the products after delivery.

19. Taxpayer did not execute any contracts in a state other than Oklahoma.

20. All sales contracts are approved in Taxpayer's principal office in Tulsa, Oklahoma. The representatives do not have authority to bind the company. Most orders bypass the sales representatives and are made directly by the customer to Taxpayer

at Taxpayer's principal place of business by telephone or mail.

21. Taxpayer filed claims for refunds for the following specified taxable years in the following amounts:

| Taxable Year | Refund Claim |
| --- | --- |
| 04/01/85–06/17/85 | $12,478 |
| 06/18/85–03/31/86 | 48,637 |
| 04/01/86–03/31/87 | 49,172 |

The amounts in controversy relate to income tax refunds claimed by Taxpayer pursuant to amended Oklahoma income tax returns filed for the applicable tax periods set forth above.

22. Section 2358 A.5.c(1) of the Oklahoma Income Tax Laws establishes that sales of tangible personal property will be apportioned to Oklahoma for income tax purposes if the taxpayer is not "doing business" in the state of the destination of the shipment and if the property was shipped from an office, warehouse, factory or other place of storage in Oklahoma.

23. Taxpayer's basis for amending the above identified returns was that sales of its product which were shipped from its manufacturing plant in Oklahoma are not properly apportioned to Oklahoma under 68 O.S. 2358 A.5.c(1) because Taxpayer is "doing business" for Oklahoma income tax purposes in the destination states of the shipments by virtue of the activities of its sales representatives.

24. Taxpayer's claims for refunds were denied by the Commission. In denying Taxpayer's claims for refunds, the Commission found that Taxpayer's activities in other states did not constitute nexus and relied on Section 2358 A.5.c(1), Rule 23.017.02 of the Oklahoma Income Tax Laws, and Federal Public Law 86-272.

25. The Taxpayer properly protested such denial by letter addressed to the Commission dated May 9, 1990.

26. If Taxpayer's activities constitute "doing business" in another state, sales of Taxpayer's product delivered to that state from an office, store, warehouse, factory or other place of storage in Oklahoma should not be subject to Oklahoma income tax as Oklahoma sales. Further, if Taxpayer is "doing busi-

ness" in these other states, Taxpayer's amended tax returns for the periods set forth above are correct and Taxpayer's claim for refunds should be allowed. If Taxpayer's activities do not constitute "doing business" in these other states, sales delivered in these states from Oklahoma should be subject to Oklahoma income tax as Oklahoma sales and Taxpayer's claim for refunds should be denied.

27. Taxpayer and the Commission have agreed to submit this matter for consideration upon the foregoing stipulations and upon briefs to be filed.

## ISSUE

Whether Taxpayer's [Protestant's] solicitation of sales in other states constitutes "doing business" under 68 O.S. § 2358 A.5.c(1).

## CONTENTIONS OF PROTESTANT

Protestant contends the concept of "doing business" as defined in the Franchise Tax Code, 68 O.S.1991, § 1202, is the same concept of "doing business" for purposes of Oklahoma income tax. Protestant argues since it exercises and enjoys a systematic and regular exploitation of the state markets through its sales representatives and ships products to other states, Protestant is "doing business" in such destination states under the statutory definition for franchise tax purposes, and necessarily, for income tax purposes.

Protestant additionally argues the phrase "doing business" has historically been used interchangeably with the concept of "nexus", which is the notion that some minimal connection to a state is necessary before a state may constitutionally assert its taxing power over a taxpayer. Therefore, Protestant concludes that the relevant standard to determine whether Protestant is "doing business" in the instant case is constitutional nexus. Protestant contends that under the Supreme Court cases it has cited, it is clear Protestant has established a sufficient nexus and is doing business in the destination states by the presence of its small sales forces in the desti-

nation states.[1] Protestant argues that solicitation activities alone are sufficient to constitute doing business, and thus nexus, for income tax purposes.

Protestant further argues the standard enacted by the Oklahoma legislature for allocating sales to foreign states is a "doing business" standard. rather than a "subject to taxation" standard. Protestant contends that a corporation may be doing business in a state and yet not be subject to tax by the foreign state because of the prohibitions of 15 U.S.C. § 381 (hereinafter referred to as Public Law 86–272), which prohibits a state from imposing a tax on income if the only business activity in the state is the solicitation of orders for sales of tangible personal property, where the orders are sent outside the state for approval and are filled by shipment from a point outside the state. Protestant contends the Tax Commission, by allocating Protestant's out-of-state sales to Oklahoma, is attempting to administratively change Oklahoma's "doing business" standard to a "subject to taxation" standard.

Protestant's final contention is that Public Law 86–272 does not apply because the statute explicitly states that it does not apply to situations in which a state seeks to tax a domestic corporation. Protestant argues that Public Law 86–272 is not applicable in determining whether Oklahoma may apportion its income tax on the basis of out-of-state sales made by Protestant, a domestic Oklahoma corporation.

## CONTENTIONS OF THE DIVISION

The Division contends the Oklahoma Income Tax Code does not specifically define "doing business". The Division contends Protestant's reliance on the Franchise Tax Code for the definition of "doing business" is misplaced because the definition of "doing business" at 68 O.S. 1991, § 1202, by its very terms, limits the definition for use only when the term appears in the Franchise Tax Code. Furthermore, the Division contends the franchise tax apportionment formula relates to capital employed in Oklahoma whereas the income tax apportionment formula relates to three factors, property, payroll and sales. The Division argues, consequently, that Protestant has erroneously concluded that doing business for franchise tax purposes is necessarily doing business for income tax purposes.

The Division contends that Public Law 86–272 provides that mere solicitation activities of non-employee, independent contractors, within a state are not sufficient to qualify as engaging in business within that state. The Division therefore concludes that Protestant is not doing business in other states when its activities in those states are solely solicitation activities.

## CONCLUSIONS OF LAW

1. The Oklahoma Tax Commission has jurisdiction to hear this protest. 68 O.S. 1991, § 207.

2. A taxpayer with unitary income must apportion that income using the formula provided in 68 O.S. 1991, § 2358 A.5., to determine that portion of income which is taxable in Oklahoma. Unitary income is defined in Rule 23.017.00 of the *Oklahoma Administrative Code* as follows:

Unitary income is defined as income derived from the conduct of each separate business in more than one state, all the factors of which are essential to determining the ultimate gain derived from the business enterprise as a whole, and not from its component parts which are too closely connected and necessary to each other to justify division or separate allocation....

3. The Supreme Court of Oklahoma defines a unitary business as a business which operates in more than one state and whose operations conducted in one state benefit and are benefitted by the operations in one or more other states where the various activities are so interdependent of and of such

---

1. *Quill Corporation v. North Dakota*, [—— U.S. ——] 112 S.Ct. 1904 [119 L.Ed.2d 91] (1992); *Standard Pressed Steel Co. v. Washington Dept. of Revenue*, [419 U.S. 560] 95 S.Ct. 706 [42 L.Ed.2d 719] (1975); *Scripto, Inc. v. Carson*, [362 U.S. 207] 80 S.Ct. 619 [4 L.Ed.2d 660] (1960); and *N.W. States Portland Cement Co. v. Minn.*, [358 U.S. 450] 79 S.Ct. 357 [3 L.Ed.2d 421] (1959).

mutual benefit that they, in effect, comprise one integral business. *Flint Resources Company v. Oklahoma Tax Commission,* 780 P.2d 665, 670 (Okl.1989); *Ashland Exploration, Inc. v. Oklahoma Tax Commission,* 751 P.2d 1070, 1072 (Okl.1988).

4. The amount of income or loss derived from a unitary business enterprise that shall be apportioned to Oklahoma is determined on the basis of the arithmetical average of three factors consisting of property, payroll and sales or gross revenue. 68 O.S. 1991, § 2358 A.5. The controversy in the instant protest involves the sales factor of the apportionment formula. The method for computing the sales factor is provided in 68 O.S. 1991, § 2358 A.5.c(1), which states in pertinent part:

> c. The sales factor is a fraction, the numerator of which is the total sales or gross revenue of the taxpayer in this state during the tax period, and the denominator of which is the total sales or gross revenue of the taxpayer everywhere during the tax period. Sales as used in this subsection does not include sales or gross revenue which are separately allocated in paragraph 4 of this subsection.
>
> (1) Sales of tangible personal property have a situs in this state if the property is delivered or shipped to a purchaser other than the United States Government, within this state regardless of the FOB point or other conditions of the sale; or the property is shipped from an office, store, warehouse, factory or other place of storage in this state and (a) the purchaser is the United States Government or (b) the taxpayer is not doing business in the state of the destination of the shipment.

\*   \*   \*   \*   \*   \*

Protestant states the basis for amending its Oklahoma income tax returns was that sales of its product shipped from its manufacturing plant in Oklahoma should not have been included in Oklahoma taxable income because taxpayer was "doing business" for Oklahoma income tax purposes in the destination states of the shipments by virtue of the activities of its sales representatives.

The determinative issue is what constitutes "doing business" in the destination states as that phrase is used in Section 2358 A.5.c(1) of the Income Tax Code.

5. The Oklahoma Income Tax Code nowhere defines the phrase "doing business". Protestant contends the definition of "doing business" in the Franchise Tax Code, 68 O.S. 1991, § 1202, should be used to define "doing business" in Section 2358 A.5.c(1) of the Income Tax Code, because of the interrelationship between the Franchise Tax Code and the Income Tax Code. "Doing business" is defined in Section 1202 as follows:

> When the term "doing business" is used in this Article, it shall mean and include each and every act, power or privilege exercised or enjoyed in this State, as an incident to, or by virtue of the powers and privileges acquired by the nature of such organizations, as are enumerated in the preceding section.

68 O.S. 1991, § 1202.

Protestant's contention fails for two reasons. First, whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears. 25 O.S. 1991, § 2. The language in Section 1202, "[w]hen the term 'doing business' is used in this Article . . . ." suggests that the legislature intended the definition to be used only when the term appears in the franchise tax statutes. Therefore, the definition of "doing business" in Section 1202 should not be used to determine the meaning of the phrase "doing business" in 68 O.S. 1991, § 2358 A.5.c(1).

6. Second, the distinction between the two taxes cannot be ignored. Franchise tax is imposed on the privilege of doing business in Oklahoma. *Great Lakes Pipe Line Co. v. Oklahoma Tax Commission,* 204 Ok. 518, 231 P.2d 655 (1951). Thus, no more than an active presence of the corporation in the state is required. "Doing business" need be no more than the act of solicitation by a corporation for franchise tax purposes.

In contrast, income tax is a tax on the net income or profit derived from doing business. *Southwestern Gas & Electric Co. v. Okla-*

*homa Tax Commission,* 208 Okl. 85, 253 P.2d 549 (1953). This is predicated on more than the mere solicitation of business.

7. In the absence of a statutory definition, the meaning of words used in a statute are to be understood in their ordinary sense. 25 O.S. 1991, § 1. "Doing business" was defined by the Supreme Court in *Flint v. Stone Tracy Co.,* [220 U.S. 107, 171] 31 S.Ct. 342, 357 [55 L.Ed. 389] (1911), as follows:

'Business' is a very comprehensive term and embraces everything about which a person can be employed. Black's Law Dict. 158, citing *People ex rel. Hoyt v. Tax Comrs.,* 23 N.Y. 242, 244. "That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit." 1 Bouvier's Law Dict. p. 273.

"Doing business" is a very broad concept and generally encompasses all the activities engaged in by a business that contribute to the profit or loss of the business. However, a word used in a statute cannot be viewed in isolation. As stated by the court in *Colchensky v. Oklahoma Tax Commission,* 184 Okl. 207, 86 P.2d 329 (1939), in construing a statute the intention or purpose of the legislature or the meaning of a statute is to be determined not from any single part, portion or section, but from a general consideration or view of the act as a whole, or in its entirety. Therefore, the purposes for apportioning the income of a unitary business should be considered in determining whether Protestant was doing business in the destination states.

8. The Supreme Court stated in *Allied–Signal, Inc. v. Director, Division of Taxation,* [— U.S. ——, ——] 112 S.Ct. 2251, 2259 [119 L.Ed.2d 533] (1992), that "the unitary business rule is a recognition of two imperatives: The States' wide authority to devise formulae for an accurate assessment of a corporation's intrastate value or income; and the necessary limit on the States' authority to tax value on income which cannot in fairness be attributed to the taxpayer's activities within the State." At a minimum, Prot-

estant should not be considered doing business within the destination states in which Protestant ships tangible personal property if those states have no basis for imposing a tax on the value of Protestant's business activities within the destination states. The purpose for apportioning income is to limit taxation to only the value of the income earned within a state's borders. Therefore, if the destination states have no basis for imposing income tax on the value of Protestant's business activities within their borders, the suggestion is that the value was earned from Protestant's business activities conducted in Oklahoma.

9. Public Law 86–272 was enacted by Congress in response to the Supreme Court's decision in *Northwestern States Portland Cement Co. v. Minnesota,* [358 U.S. 450] 79 S.Ct. 357 [3 L.Ed.2d 421] (1959). The Court in *Northwestern States* upheld the imposition of state income tax against two out-of-state companies whose in-state operations included a sales staff and a sales office. The Court stated in *Northwestern States* "that net income from the interstate operations of a foreign corporation may be subject to state taxation provided the levy is not discriminatory and is properly apportioned to local activities within the taxing state forming sufficient nexus to support the same." *Id.* [358 U.S. at 452, 79 S.Ct.] at 359. In the months following the decision in *Northwestern States,* the Supreme Court granted a motion to dismiss and denied certiorari, respectively, on two Louisiana cases challenging the imposition of Louisiana state income taxes based on local solicitation of orders that were sent out of the state for approval and shipping.[2] The Court's refusal to disturb the decisions raised concern that *Northwestern States* would be construed to mean that a company whose only contacts with a state consisted of sending salesman into a state could be subjected to income taxation by those states. Congress responded by passing Public Law 86–272, which established the minimum standards for the imposition of a state net income tax based on the solicitation of interstate

2. *Brown–Forman Distillers Corp. v. Collector of Revenue,* 234 La. 651, 101 So.2d 70 (1958), appeal dism'd, 359 U.S. 28 [79 S.Ct. 602, 3 L.Ed.2d 625] (1959); *International Shoe Co. v. Fontenot,* 236 La. 279, 107 So.2d 640 (1958), cert. denied, 359 U.S. 984 [79 S.Ct. 943, 3 L.Ed.2d 933] (1959).

sales. Public Law 86–272 states in pertinent part:

(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State;

\*   \*   \*   \*   \*   \*

The stipulated facts indicate the only business activity Protestant carried on in the destination states was the solicitation of orders by its representatives. The orders were sent to Oklahoma for approval and were filled by shipment from Oklahoma to the destination states. Pursuant to Public Law 86–272, the destination states would be prohibited from imposing a net income tax on the income derived from Protestant's business activities within the destination states. Therefore, Protestant should not be considered to be doing business within the destination states and Protestant's sales of tangible personal property that were shipped to the destination states were properly "thrown back" to Oklahoma pursuant to 68 O.S. 1991, § 2358 A.5.c(1).

10. Protestant's claim for refund should be denied.

## RECOMMENDATION

Based on the above and foregoing findings of fact and conclusions of law, it is the recommendation of the undersigned Administrative Law Judge that the claim for refund of Protestant, Linear Films, Inc. and Subsidiaries, be denied.

OKLAHOMA TAX COMMISSION
/s/ Melanie K. Parks
MELANIE K. PARKS
ADMINISTRATIVE LAW JUDGE