OKLAHOMA TAX COMMISSION v. SISTERS OF THE SORROWFUL MOTHER.

*97 P. 2d 888.*

No. 29199.   Dec. 12, 1939.

Rehearing Denied Jan. 16, 1940.

Dick Jones, A. L. Herr, and C. D. Stinchecum, all of Oklahoma City, for plaintiff in error.

T. Austin Gavin, of Tulsa, for defendant in error.

RILEY, J.   This is an appeal by the Oklahoma Tax Commission from a judgment in favor of the defendant in error in an action commenced by the latter to recover taxes paid under protest.

The parties will be referred to as they appeared in the trial court. Plaintiff is a charitable organization organized as a corporation under the laws of the state of Wisconsin, and is authorized to do business in the state of Oklahoma. The business in which plaintiff is engaged in this state is the operation of a hospital in the city of Tulsa.

In February, 1938, defendant assessed a use tax against plaintiff, including penalty and interest in the sum of $404.38. The assessment was made under the provisions of article 11, ch. 66, S. L. 1937, Title 68, ch. 29, Okla. Stat. Ann., designated and known as the "Use Tax, 1937." The period of time in which the tax is assessed is from June 1, 1937, to January 1, 1938.

Plaintiff paid the tax penalty and interest under protest and commenced this action to recover same.

The validity of the act levying the tax is not questioned.

Plaintiff claims exemption from the tax under the provisions of subdivision (e) of the section 5 of the act and subdivision (i) of section 6, art. 10, ch. 66, S. L. 1937.

In this connection plaintiff alleges and claims that: "It is a charitable corporation or organization, and is not engaged in business for profit or savings, competing with other persons engaged in the same or similar business."

The contention of defendant is that "plaintiff is engaged in the hospital business, and in conducting said business treats various patients that may apply for treatment; that it is engaged in said business for profit or savings, and that in conducting said business it is competing with other persons engaged in the same or similar business."

The cause was submitted upon a stipulation as to certain facts, and evidence was taken as to certain other facts. The stipulation for the most part covers formal matters concerning which there is no controversy. From said stipulation it appears that plaintiff owns and operates a hospital in the city of Tulsa known as St. John's Hospital; that the tax in question was assessed against plaintiff representing 2 per centum on articles purchased by plaintiff outside the state of Oklahoma, brought into the state during the period above mentioned and used by plaintiff.

It then stipulated:

"* * * That the plaintiff in this case is a charitable organization and that it does not operate its business for the purpose of earning a profit which would inure to the benefit of any individual, that any money it may earn in excess of its operating expenses is used by it in extending its facilities for carrying on its hospital and hospital work and charitable work."

With respect to the extent of the above stipulation, it was then stated by Mr. Gavin, counsel for plaintiff:

"I am not certain exactly what his theory is, whether he intends to restrict the stipulation merely to the words contained in the statute, namely, profits, and exclude the item of savings."

To which Mr. Cund, counsel for defendant, replied:

"That is right."

Plaintiff then presented as a witness one of the Sisters, who testified in substance that she was and had been for about one year the superintendent of the hospital. That when patients came to the hospital no inquiry was made as to whether they were able to pay, but only what kind of a room they wanted, and how much they desired to pay. That some patients could pay and some could not. Those who could not pay were taken the same as those who could pay, but as a rule those who could not pay were not given separate rooms, but for the most part were placed in wards. None were turned away because of inability to pay.

All the Sisters who were members of the religious organization known as the Sisters of the Sorrowful Mother are members of the corporation. The corporation has no capital stock, but has by-laws.

She then testified in substance as to how the hospital was built. Its original cost was about $1,000,000, $500,000 of which was donated by citizens of Tulsa, and the remainder was paid by the corporation. Probably the greater part of

that paid by the corporation came from other hospitals in other states; that the corporation operates in all 13 hospitals in several states; that all money which comes in over and above operating expenses is used in upkeep and building new additions; that since the hospital was constructed, $500,000 has been expended for additional building; of this sum $100,000 was donated by Waite Phillips; that the corporation intends in the future, as needs arise and funds are available, to erect other buildings; that during the year 1937, about 5,647 patients were received and treated in the hospital, 3,140 were "paying" patients, 923 were "partial pay" patients, 553 were public charges, and 1,029 were full charity patients.

During 1937, receipts from patients were $254,392.67, and for the first nine months of 1938 receipts were $195,-564.19. All of this was paid out on the nurses' home and upkeep of the place. Upkeep, we presume, includes operating expenses.

The articles of incorporation were introduced in evidence, showing, among others, the following provisions:

"2. The said corporation is formed and shall be without capital stock, and no dividend, salary, wages or pecuniary profits of whatever kind shall ever be declared or paid any of its members.

"3. This corporation is organized for the purpose of establishing, maintaining and conducting in the state of Wisconsin or elsewhere hospitals for the sick and for the insane, training schools for nurses, homes for the aged, elementary schools, orphan asylums and other charitable institutions for the benefit of, to be connected with, and under the control of the religious community of Sisters known as 'The Sisters of the Sorrowful Mother,' the headquarters of which community are located in the city of Marshfield, Wood county, and state of Wisconsin."

And:

"8. All property, both real or personal, of whatever kind, nature of description, which shall be owned or acquired by this corporation, and which may be lawfully conveyed to or held by it, either by devise, gift, grant, purchase or otherwise, shall be vested in this corporate name and shall be devoted solely to the objects and purposes of this corporation, and all deeds, notes and mortgages, contracts, indentures, and conveyances made by such corporation to any corporation, person or persons, shall be signed, executed, acknowledged and delivered by the President and Secretary of this corporation, provided, however, that the Sister Superior of any institution owned or controlled by this corporation shall have the power to endorse checks, drafts and notes, to make and sign any contracts not involving notes or real estate, if such contracts are necessary for the proper conducting of the business affairs of said institution."

There are four other hospitals in the city of Tulsa doing a general hospitalization business.

None of the members of the corporation receive any salary or compensation for their services other than their living expenses allowed in the nature of food, clothing, and rooms.

The trial court found, and held:

"* * * That the plaintiff is a charitable corporation or organization and that it is not engaged in business for profit or savings, competing with other persons engaged in the same or similar business in the sense, meaning and intendment of section 1295 of chapter 28, Title 68, O.S.A. 1937, and subdivision I, of chapter 27, Title 68, O.S.A. 1937, and that accordingly the plaintiff is not subject to the provisions of said section and said subdivision or either of them, and that accordingly plaintiff is not required to pay the tax prescribed therein."

Judgment was entered for plaintiff for the recovery of the tax, penalty, and interest paid under protest.

Whether plaintiff was subject to the tax depends upon the provisions of section 4, art. 11, ch. 66, S. L. 1937, as limited by certain provisions of section 5 of the same act. Section 4 reads:

"There is hereby levied and there shall be collected from every person using, within this state, any article of

tangible personal property purchased, leased, rented or exchanged subsequent to the date of passage and approval of this act, an excise tax for the privilege of so using such tangible personal property. Such tax shall be and is hereby levied, and shall be collected in an amount equal to two (2%) per centum of the purchase price (as defined in section 3 of this act) of such tangible personal property."

The applicable provisions of section 5 are:

"The provisions of this act shall not apply: * * *

"(e)  In respect to the use of tangible personal property now specifically exempted from taxation under the law of Oklahoma assessing a sales or consumers' tax upon the sale of tangible personal property."

For the exemption therein referred to under the law assessing a sales or consumers' tax, we must look to section 5, art. 10, ch. 66, S. L. 1937, levying a tax of 2 per centum (2%) upon the gross proceeds or gross receipts derived from the sale of (a) "Tangible personal property," and section 6, of the same act, relating to certain exemptions from the tax, which so far as applicable provides:

"There is hereby specifically exempted from the tax imposed by this act the following: * * *

"(i)  The gross receipts or gross proceeds derived from the sale of tangible personal property, or service to charitable organizations, except where such organizations may be engaged in business for profit or savings, competing with other persons engaged in the same or similar business."

In most cases when the words "a corporation organized for profit," or "a corporation engaging in or carrying on business for profit," are used, it is generally held that profit means money or gains of some kind which can or may be distributed or paid out to individuals as stockholders or members of the corporation.

Under the stipulation entered into in this case, and the provisions of the articles of incorporation under which plaintiff is operating, it must be conceded that plaintiff is not engaging in business for profit in that sense. The stipulation does not cover the words "or saving." But it is clear from the record that plaintiff is not engaged in business for "saving" in the sense that any gains or savings in the way of surplus of income over operating expenses is or may be distributed or paid out to any individual as a member of the corporation.

The record discloses that all plaintiff's income over and above operating expenses are being applied to expand the facilities of the corporation in carrying on its hospitalization business in the way of plant additions.

The general principle applied to religious, charitable, and benevolent organizations in determining whether property owned by such corporations is exempt from taxation is based on the "use" to which such property or the income therefrom is devoted. Phi Kappa Psi v. State, 175 Okla. 605, 53 P. 2d 1130; Beta Theta Pi v. Board County Com'rs, 108 Okla. 78, 234 P. 354. And in Board County Com'rs of Garfield County v. Phillips University, 144 Okla. 57, 289 P. 720. It is well settled in this state that the purpose for which property and the income therefrom are used is the test to be applied in determining collectibility of an ad valorem tax. That was one of the controlling factors in Board of County Commissioners of Tulsa County v. Sisters of the Sorrowful Mother (this plaintiff) 141 Okla. 32, 283 P. 984, wherein the question of whether the property owned by plaintiff and used in carrying on its business was subject to ad valorem taxation. See, also, Sand Springs Home v. State, 168 Okla. 323, 32 P. 2d 928. But here we are dealing with an entirely different tax. It is neither a tax on the property of plaintiff nor its income.

It is an excise tax which the state is authorized to exact, and in connection with the "Consumers Tax Act" it has for its primary purpose raising revenue for state purposes. It is particularly designed to prevent consumers es-

caping payment of the sales tax by going outside the state and purchasing tangible personal property in any one month in excess of the value of $100, and bringing same into the state for their use or consumption.

Defendant in error recognizes in its brief (p. 18) that this court "held in City of Ardmore v. Oklahoma Tax Commission, 168 Okla. 316, 32 P. 2d 728, that said constitutional provision (sec. 6, art. 10) was intended to apply only to ad valorem taxes on specific property." Therein this court based its rule on the federal decisions cited, distinguishing between a direct tax on property and an excise tax imposed as against property, but with liability for payment levied upon the person using or consuming it. We do not depart from that rule.

If a religious or charitable organization is engaged in business for "profit or saving" and competing in such business with other persons engaged in the same or similar business, it is subject to the tax. The question is whether it was the intention of the Legislature to require the payment of the tax without regard to the use of the profit or savings.

In determining the question of whether it was the intent of the Legislature to require payment of the tax in question without regard to the use of the surplus income of the business in which charitable organizations may be engaged, we may look to the history of the so-called "Use Tax" Act. In so doing we do not overlook the fact that the policy of this state is and had been liberal towards exempting the property and income of charitable, religious, and benevolent organizations from taxation. In this connection, section 912, ch. 21, title 68, Okla. Stat. Anno., exempts all religious, charitable, eleemosynary, benevolent, fraternal, and educational corporations or associations from the provisions of the Income Tax Act, without regard to the use of such income. It also exempts all corporations or organizations not organized for profit where no part of the net earnings thereof inure to the benefit of any stockholder, individual, or member.

The first Use Tax Act, like the present act, made exemption depend upon whether the particular purchase of tangible property would have been subject to the consumers tax had it been purchased within the state.

In the first "Sales Tax Act," that of 1933, no exemption was provided as to sales to or by religious or charitable organizations. Laws 1933, c. 196.

In 1935, the Sales or Consumers Tax Act was re-enacted with certain significant changes in the provision for exemptions. The exemption as applied to charitable or religious organizations was in section 5, art. 7, ch. 66, S. L. 1935, and provided:

"There are hereby specifically exempted from the tax imposed by this act, the following: * * *

"(h) The gross proceeds derived from the sale of tangible personal property or service to or by charitable or religious organizations to the extent that the income is used for philanthropic purposes."

Thereunder, sales to or by plaintiff would have been exempt under the record here made.

The "Use Tax" levied by article 12, ch. 66, S. L. 1935, on motor vehicles purchased outside the state, specifically exempted vehicles registered by charitable or religious organizations and operated exclusively for philanthropic purposes.

In 1937, the "Use Tax Act" and the Sales or Consumers Tax Act were both re-enacted with the provisions for exemption as above quoted.

Thereunder it is clear that the intent of the Legislature was to exempt the gross proceeds derived from the sale of tangible personal property to charitable organizations from the tax only where such organizations were not engaged in business for profit or savings, and the business in which such organizations are engaged is such as not to come in competition with a like or similar busi-

ness in which other persons are engaged, and without regard to the use of the income, whether it be called profit or savings.

In view of the history of the legislation and the language used, we can come to no other conclusion.

There is some contention that the plaintiff is not engaged in a business competing with other persons engaged in the same business. But this contention cannot be sustained.

The record discloses that during the year 1937, 5,645 patients were admitted to plaintiff's hospital. Of this number 3,140 were listed as "pay patients." We take this to mean that these 3,140 patients paid the usual and customary rates for accommodations and services rendered; 923 patients paid reduced or lower rates; 553 patients were public charges coming from public or private health groups. For these the public paid still lower rates; 1,029 patients were full charity patients and paid nothing. Full pay patients alone constituted about 56 per cent. of the total number of patients. From these patients and those who paid less than full rates, the hospital derived an income considerably more than the total operating expense, including the expense incurred by reason of the charity patients and those who paid less than the cost of service. To the extent of the 3,140 patients who paid full rates, plaintiff was clearly in competition with the four other hospitals engaged in the same business in the city of Tulsa.

Plaintiff contends that because it took a considerable number of full charity patients it is in a class different from the other hospitals. This may be true as to charity patients, though there is nothing in the record to show that the other hospitals in the city of Tulsa do not take some charity patients, but if they do not, this would not alter the fact that plaintiff is in competition with them as to all patients who pay full rates.

Holding, as we do, that the intent of the Legislature was to subject charitable organizations engaged in business for profit or saving in the sense that the business receipts exceed the operating expenses, without regard to the use to which the surplus is put, it follows that the trial court erred in its findings and judgment.

Having concluded the plaintiff corporation is engaged in "business competing with other persons engaged in the same or similar business," that it is not exempt from payment of the "Use Tax" by reason of constitutional provision, and extending the view of the stipulation restricting the meaning of "profit" to include "savings," yet in view of the meaning of the word "savings," and appreciating that it is solely applicable to the interest of the corporation, we are drawn to the conclusion that the tax is collectible.

Webster's New International Dictionary's definition of "savings" is "Preservation from danger or loss. Economy in outlay. Prevention of waste. Something laid up or kept from becoming expended or lost; a reservation."

The fact is we have traced in evidence a showing of surplus revenue, but this fact may not be necessary to avoid the exemption, and it is a cardinal rule that exceptions from tax are strictly construed.

It could well be argued that the only prerequisite to collection of the tax in this connection is that the object of the organization be a savings in the absence of one in fact.

No doubt the trial court took the view that the object of this corporation was charity in that it did some charitable work, that consequently "profit or savings" confined to the corporation itself was only an incident of its organization, and, therefore, not being within purview of the act, it was not subject to the tax.

We cannot sustain this view, for the Legislature plainly intended to tax all organizations the object of which was charity, where they were engaged in competitive business for profit or savings.

The judgment is reversed and the cause is remanded, with directions to enter judgment for defendant.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN and CORN, JJ., concur. GIBSON, HURST, DAVISON, and DANNER, JJ., dissent.