PERSONAL LOAN & FINANCE CO. OF CAPITOL HILL, a Corporation, Plaintiff in Error,

v.

OKLAHOMA TAX COMMISSION, J. D. Dunn, Chairman, L. L. Leininger and M. C. Connors, members of the Tax Commission of the State of Oklahoma, Defendants in Error.

No. 41768.

Supreme Court of Oklahoma.

Feb. 6, 1968.

Leo Thompson, Oklahoma City, for plaintiff in error.

Albert D. Lynn, E. J. Armstrong, R. O. Ingle, Oklahoma City, for Oklahoma Tax Commission.

DAVISON, Justice.

This is an appeal by Personal Loan & Finance Co. of Capitol Hill (herein referred to as "taxpayer") from an order of the Oklahoma Tax Commission assessing additional corporate franchise taxes for the tax year 1964–1965. The appeal presents the question of whether, in determining the amount of capital employed by the taxpayer in its business in Oklahoma, the taxpayer was entitled to deduct the amount of certain loans made to the taxpayer by its parent corporation.

The matter was tried before the Tax Commission upon a stipulation of facts. It was stipulated that the taxpayer is an Oklahoma Corporation and that its parent company is Personal Loan & Finance Corporation of Memphis, Tennessee, a Tennessee Corporation; that the parent company borrows money from Oklahoma banks, and in turn loans such money to the subsidiary taxpayer, as needed, taking interest bearing promissory notes from the subsidiary; that all such notes are made payable in less than three years, as shown by a schedule of nine notes reflecting a balance of $420,000.00; that the records of the parent company and the subsidiary taxpayer reflect the notes are carried as notes payable; and that the issue is the construction and application of 68 O.S.Supp.1963, § 12–1209(a) (1) and (b). Renumbered 68 O.S.Supp.1965, § 1209 (a) (1) and (b).

In its franchise tax return, the taxpayer deducted the $420,000 in determining the amount of capital subject to the tax. The Tax Commission construed the statute to provide that the money loaned by the parent company to the subsidiary taxpayer could not be deducted and sustained the assessment of the additional franchise tax.

Title 68 O.S.Supp.1965, § 1209(a) (1) and (b) is as follows:

"§ 1209. Capital—*Computation*

"(a) For the purpose of *computing* the amount of annual franchise tax levied upon and payable by the corporations, associations and organizations enumerated in Sections 1203 and 1204 of this Code, the word '*capital*' shall be construed to include the following:

"(1) Outstanding capital stock, surplus and undivided profits, which shall include any amounts designated for the payment of dividends until such amounts are definitely and irrevocably placed to the credit of stockholders subject to withdrawal on demand, *plus* the amount of bonds, *notes,* debentures or other evidences of indebtedness *maturing and payable more than three (3) years after issuance.* The term 'capital' stock where herein used shall include all written evidence of interest or ownership in the control or management of a corporation or other organization.

"(b) *Advances made by a parent to a subsidiary* or by a subsidiary to a parent corporation, organization or association *shall be eliminated* by both the parent and subsidiary *from the calculations necessary to determine the amount of taxable capital* employed in the business of either or both the parent and subsidiary. Provided, however, advances made for purely operating expenses may, upon proper showing, satisfactory to the Tax Commission, be included in such calculations." (Emphasis supplied.)

The order of the Tax Commission was based on its construction of the above quoted statute. It construes subsection (a) and (1) thereof to provide generally that note indebtedness maturing and payable in three years or less after issuance are excluded from capital and, therefore, deductible from capital for franchise purposes. It construed subsection (b) as a modification of the general provisions in situations where such loans are made by a parent to a subsidiary or by a subsidiary

to a parent corporation. Under this construction the Tax Commission construes "advances" between parent and subsidiary to embrace note indebtedness and, therefore, "advances" [under (b)] are to be *"eliminated by* both the parent and *subsidiary from the calculations necessary* [under (a) (1)] *to determine the amount of taxable capital employed in the business* of either or both the parent and subsidiary." This would exclude the note indebtedness of the subsidiary taxpayer from all calculations in computing the franchise tax levied upon its capital and bar the taxpayer from deducting that indebtedness.

The taxpayer contends that its debt is clearly in the category of note indebtedness of three years or less and is deductible for the purpose of determining taxable capital. Taxpayer construes the statute to reflect a legislative intent to place "note" and other described indebtedness [(a) (1)] in one category for the purpose of determining the amount of taxable capital, and to establish a separate and distinct category of "advances" between parent and subsidiary corporations [(b)] for that purpose. Taxpayer further contends that, if the provisions of the statute do not support its interpretation thereof, then the tax statute is ambiguous and its meaning doubtful.

Taxpayer relies on the following propositions of law: Where a tax statute is ambiguous and its meaning doubtful, it is usually construed in favor of the taxpayer, Western Auto Supply Co. v. Oklahoma Tax Commission, Okl., 328 P.2d 414; tax statutes are strictly construed against the state, National Bank of Tulsa v. Oklahoma Tax Commission, Okl., 380 P.2d 542; where a tax statute is susceptible of two constructions, if the legislative intention is in doubt, the doubt as a rule should be resolved in favor of the taxpayer, Campbell v. Cornish, 163 Okl. 213, 22 P.2d 63.

The merit of taxpayer's contention depends on whether "advances" are different, or distinguishable, from the "note" and

other described indebtedness in subsection (a) (1).

We point out that the present situation involves loans of money. In Black's Law Dictionary the word "Advances" is defined as follows:

"This word, when taken in its strict legal sense, does not mean gifts, (advancements,) and does mean a sort of loan; and, when taken in its ordinary and usual sense, it includes both loans and gifts,—loans more readily, perhaps, than gifts."

In Webster's 3rd New International Dictionary, the word "advance" in a monetary sense is defined as follows:

"b: To supply (as money or other value) beforehand in expectation of repayment or other future adjustment."

In B. J. Carney & Co. v. Murphy, 68 Idaho 376, 195 P.2d 339, 342, it is stated that the word "advance," as ordinarily used, implies a loan.

In 2 C.J.S. p. 496, it is stated, concerning the word "advance":

"A word of wide significance, which depends for its meaning, upon the context or surrounding circumstances."

and at page 497 as follows:

"As Loan. While, in its strictly etymological significance, the word does not necessarily imply a loan, it has been so frequently used as its equivalent that it may be said that the word, whether taken according to its meaning in law or according to its meaning in common usage, includes loans as well as gifts. Used in this sense the word has reference to the furnishing of money or goods to others in expectation of a return or some reimbursement."

■ As the word "advances" is used in the context of the statute we can only conclude the word embraces and has reference to loans represented by notes and that this was the intent of the Legislature in enacting the statute.

It is clear that the provisions of subsection (a) (1) and subsection (b) of the statute must be considered together in computing the tax.

Subsection (a) (1) expressly provides for "computation" and "computing" the amount of the franchise tax and states certain items are to be included in the computation. This involves a process of "calculations." Subsection (b) states "advances" by a parent to a subsidiary shall be *eliminated* from the *calculations necessary* to determine the amount of taxable capital. The only reasonable interpretation of these provisions is that the described advances [(b)], consisting in this case of loans represented by notes [(a) (1)], should be eliminated from the calculations to determine the taxable capital. It would be illogical to say that the Legislature intended to eliminate from the calculations something it had not previously included in the calculations.

■ It is elementary that legislative acts are to be construed in such manner as to reconcile the different provisions and render them consistent and harmonious, and give intelligent effect to each. Home-Stake Production Co. v. Board of Equalization, Okl., 416 P.2d 917, 926.

■ It is also a rule of statutory construction that in ascertaining legislative intent, the language of the entire act should be considered and that construction given which is reasonable and sensible. Christian v. Shideler, Okl., 382 P.2d 129.

The taxpayer is a corporation organized under the laws of Oklahoma and employing capital in Oklahoma. Its parent corporation is a Tennessee corporation and does not engage directly in the loan business in Oklahoma. Title 68 O.S.Supp.1963, § 12–1203, renumbered 68 O.S.Supp.1965, § 1203, levies and assesses a franchise or excise tax upon the taxpayer equal to $1.25 for each $1000 "of the amount of capital used, invested or employed in the exercise of any power, privilege or right inuring to" it, within this State and requires payment of the tax for the right to exist as a corporation and enjoy under the protection of the State the powers, rights, privileges and

immunities derived from the State. The evident intent of the Legislature being that capital used, invested or employed within this State be subjected to the tax. · If the taxpayer's contention be sustained, then taxpayer would deduct its $420,000 debt owed the parent corporation from the taxpayer's capital assets. This would result in $420,000 of the capital used, invested or employed within the State being spared from the franchise tax. It is obvious the Legislature, in enacting § 1209(b), supra, intended to prevent this result when there was a subsidiary-parent relationship, or a parent-subsidiary relationship, between borrower and lender.

In their briefs the parties argue the proposition of the weight to be given to administrative construction of a statute. There is nothing in the stipulation or in the record before this court to indicate either a short or long continued administrative construction of the statute. Consequently, this court cannot, and does not, consider this proposition.

■ It is our conclusion the taxpayer's first proposition of error cannot be sustained.

The taxpayer further contends 68 O.S. Supp.1965, § 1209(b) violates the guarantees and rights of due process and equal protection of the laws embodied in Art. 2, § 7 of the Oklahoma Constitution and the 14th Amendment of the United States Constitution because it unreasonably and arbitrarily discriminates against a multi-corporate structure and in favor of a single corporation operation.

The basis of taxpayer's argument is that the statute discriminates in the computation of corporate franchise taxes in favor of a single corporation with no parent company.

The taxpayer states that under the provisions of 1209(a) (1) a single corporation, with no parent company, can borrow money on short-term notes of 3 years or less from a lending institution, and may deduct the note balances in making its computa-

tions for payment of franchise · taxes. Whereas, under 1209(b), if a subsidiary corporation borrows from a parent company on short-term notes, it may not deduct the indebtedness for franchise tax purposes. Taxpayer urges the statute does not apply alike or in a reasonable degree to all corporations in the same class, as required by the "equal protection" clauses of the State and Federal constitutions.

The question presented is whether the statutory classification of parent-subsidiary corporations for franchise tax purposes is reasonable. Also, although not raised by taxpayer, it appears the circumstances involve Art. 10, § 5, of the Oklahoma Constitution, providing that taxes shall be uniform upon the same class of subjects.

Under the provisions of § 1203, supra, the Legislature levied a franchise tax on the amount of capital used, invested and employed by domestic corporations in Oklahoma. The Legislature also enacted 65 O.S.Supp.1963, § 12–1204, renumbered 65 O.S.Supp.1965, § 1204, levying the same tax on such capital of foreign corporations doing business in Oklahoma. The Legislature, in enacting § 1209(b), obviously determined it would establish a classification of parent-subsidiary corporations for the purpose of levying and collecting franchise taxes on capital employed in Oklahoma. Subsection (b) applies to all parent-subsidiary situations. In lender and borrower transactions between Oklahoma parent-subsidiary corporations the tax is levied and paid the State. In the absence of subsection (b) any non-resident foreign parent corporation could loan money to its Oklahoma subsidiary corporation and neither would be taxed on such capital in Oklahoma.

■ In Daube v. Oklahoma Tax Commission, 194 Okl. 487, 152 P.2d 687, we held that the "equal protection" clauses of the Oklahoma Constitution (Art. 2, § 7) and Federal Constitution (Amend. 14) are satisfied if the statute applies alike or in a reasonable degree to all parties in the same class.

In Armour & Co. v. Board of State Affairs, 156 La. 661, 101 So. 13, 15, it was held an Act providing that subsidiary corporations will not be permitted to deduct accounts and bills payable to a parent corporation from accounts and bills receivable for purposes of assessment was not discriminatory and invalid, although other taxpayers, including corporations, were permitted to offset credits. The reason given for the holding was that the provision in the Fourteenth Amendment, that no State shall deny any person the equal protection of the laws, does not prevent a State from adjusting its system of taxation in all proper and reasonable ways, nor compel the States to adopt an iron rule of equal taxation.

In accord see 16A C.J.S. Constitutional Law § 527, pp. 413, 414.

 In the classification of property for the purpose of taxation the Legislature is vested with wide discretion, subject to the provisions of § 5, Art. 10, of the Oklahoma Constitution, that taxes shall be uniform upon the same class of subjects. Magnolia Petroleum Co. v. Oklahoma Tax Commission, 188 Okl. 85, 106 P.2d 829.

In General Motors Acceptance Corporation v. Hulbert, 190 Okl. 568, 125 P.2d 975, 981, we quoted with approval the following statement in 16A C.J.S. Constitutional Law § 520, pp. 391, 392:

"* * * Since taxation is so largely a question of policy, the legislature possesses the largest measure of discretion in these matters, and the courts will not declare a tax statute void as a violation of the equal protection guaranty as long as the classification or selection made by it is based on a reason, even though in their opinion the reason is a poor one and the statute itself is unjust, the test being good faith, not wisdom. * * *"

It is our conclusion that § 1209(b) is a valid and constitutional exercise by the Legislature of the taxing power of the State of Oklahoma.

Title 68 O.S.Supp.1965, § 1209(b) does not violate the 14th Amendment to the United States Constitution, nor § 7, Art. 2, nor § 5, Art. 10, of the Oklahoma Constitution.

The order of the Oklahoma Tax Commission is correct, and it is affirmed.

All the Justices concur.