The FIRST NATIONAL BANK AND TRUST COMPANY OF TULSA, Paul R. Peterson and Peter J. McMahon, Co-Executors of the Estate of Henry F. Worley, Deceased, Plaintiffs in Error,

v.

OKLAHOMA TAX COMMISSION, Defendant in Error.

No. 42251.

Supreme Court of Oklahoma.

Nov. 12, 1968.

Robert L. McGowen of Conner, Winters, Randolph, & Ballaine, Tulsa, for plaintiffs in error.

Albert D. Lynn, E. J. Armstrong, R. O. Ingle, Oklahoma City, for defendant in error.

LAVENDER, Justice.

This is an appeal from an order of the Oklahoma Tax Commission which denied a protest by the plaintiffs in error herein, as executors of the estate of Henry F. Worley, deceased, as to a portion of the total amount of the tax which is commonly referred to as the "estate tax" assessed by the Commission with respect to the estate of their decedent. Mr. Worley died, testate, on May 5, 1963, while a resident of the State of Oklahoma.

The protest arose because of the action of the Commission in including in the gross estate of the decedent, for the purpose of computing the tax in question, a number of revenue bonds issued by the Oklahoma Turnpike Authority. The authorization for the issuance of such bonds is provided in the 1947 Oklahoma Turnpike Authority Act (69 O.S.1961 §§ 651 through 673). The bonds were owned by the decedent at the time of his death, and had been listed and valued by the executors in their tax return to the Commission, but were omitted by the executors from the value of the gross estate in computing the amount of the tax due. The executors had paid the amount of the tax shown by their return, at the time of filing the return.

Including the value of these bonds (and the Commission used the valuation shown, but not used, by the executors in their return) results in a total tax some $20,000 more than results if such value be excluded. Under the protest involved herein, the executors paid the additional amount demanded by the Commission under its assessment, and the protested amount is being held in suspense by the Commission pending this court's determination of the controversy as provided in the applicable statutes. There is no dispute as to the correct amount of the total tax if the value of these bonds should be included in the gross estate of the decedent, or as to the correct amount of the total tax if the value of the bonds be excluded, or as to the executors' right to a refund of the protested amount in the event the Commission be reversed.

The estate tax statutes in effect at the death of this decedent (68 O.S.1961, §§ 989 through 989t) were originally enacted in 1939 as House Bill No. 581 of the Seventeenth Oklahoma Legislature (page 420, O.S.L.1939), which, according to its title (omitting the recitals as to the detailed provisions of the act), was "An act relating to and levying a tax upon the transfers of the net estate of decedents, in trust or otherwise, by gifts, legacies, inheritances, devises, successions and/or transfers; * *." Section 1 of that act (68 O.S.1961, § 989) provided:

"A tax, at the rates prescribed in Section 2 of this Act, is hereby levied upon the transfer of the net estate of every decedent, * * * by will or the intestate laws of this State, by any order setting apart property and/or granting family allowances pursuant to the pro-

bate code, by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death, * *."

The "net estate and transfers" subject to the tax is to be determined by deducting certain items listed in 68 O.S.1961, § 989f from the value of the "gross estate" as defined in 68 O.S.1961, § 989e.

The executors rely entirely upon the provision in Section 14 of the Oklahoma Turnpike Act (69 O.S.1961, § 664) that:

"* * * the bonds issued under the provisions of this Act, *their transfer* and the income therefrom (including any profit made on the sale thereof) shall at all times be free from taxation within the State. * * *." (Emphasis supplied)

and argue that it is not ambiguous and, therefore, there is nothing to construe.

The order of the Commission denying the executors' protest is based upon the conclusion of law therein that "This statute only creates an exemption from income derived from interest on the bonds, or gain on the transfer by resale thereof." All of their argument herein is directed at sustaining their contention that, except for exempting the bonds themselves from taxation, and exempting the interest received on the bonds from the income tax, this statutory provision was only intended to exempt from the income tax any profit made on the transfer of the bonds by sale thereof. Tacitly, at least, the Commission concedes that this protest should be sustained if, with respect to "transfers" of the bonds, the exemption is not limited to an exemption, from the income tax, of profit or gain made on transfers of the bonds by sale thereof.

25 O.S.1961, § 1 provides that:

"Words used in any statute are to be understood in their ordinary sense, except where a contrary intention plainly appears, and except also that the words hereinafter explained are to be understood as thus explained."

The statutes following that statute do not explain the word "transfer" when used in the statutes, either as a noun or as a verb. There is nothing in the statutory provision in question herein to indicate an intention that the word "transfer," as used therein, is limited, or modified, by the words "and the income therefrom (including any profit made on the sale thereof)," which follow it, or is to be understood in any sense other than its ordinary sense.

■ As we see it, the statutory provision in question, by its language, creates an exemption from all forms of taxation, without any limitation as to the type or character of the taxes, for three separate and distinct things: (a) The bonds themselves, and (b) income from the bonds, including (but not limited to) any profit made on the sale thereof, and (c) any "transfer" of the bonds.

■ Of the several dictionary definitions of the noun "transfer" (which is the form of the word used in the statutory provision in question herein), only two would appear to be applicable in this instance. One gives the broad, general meaning of the word as "Act of transferring, or state of being transferred; the removal or conveyance from one place, person, or thing, to another; transference; transmission;" and the other gives what purports to be the meaning of the word in law: "The conveyance of right, title, or property, either real or personal, from one person to another, whether by sale, by gift, or otherwise; any act by which the property of one person is vested in another."

Since the statutory provision in question is concerned with property (bonds issued under the provisions of the Oklahoma Turnpike Authority Act), we think that the word "transfer," as used therein, is to be understood as referring to any act by which those bonds of one person are vested in another.

■ We hold that, under the provisions of 69 O.S.1961, § 664, any transfer of bonds issued under the provisions of the 1947 Oklahoma Turnpike Authority Act (69 O.S.

1961, §§ 651 through 673) which, otherwise, would be subject to the estate tax levied by the estate tax statutes that were originally enacted in 1939 (68 O.S.1961, §§ 989 through 989t), is exempt from that tax and, therefore, for the purpose of determining the value of the net estate or transfers upon which that tax is to be assessed, the value of the bonds so transferred is not to be included in the gross estate of the decedent in question.

It follows that the amount of the estate tax involved in the protest in question herein was erroneously assessed. The order of the Oklahoma Tax Commission denying such protest is hereby reversed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, and McINERNEY, JJ., concur.

BLACKBIRD, BERRY, and HODGES, JJ., dissent.