**SCOTT–RICE COMPANY, a corporation,
Appellant,**

v.

**The OKLAHOMA TAX COMMISSION
et al., Appellees.**

**No. 43454.**

Supreme Court of Oklahoma.

May 9, 1972.

Rehearing Denied Nov. 3, 1972.

Dissenting Opinion Nov. 21, 1972.

LAVENDER, Justice.

This appeal, by Scott-Rice Company, a domestic corporation, arises in a proceeding before the Oklahoma Tax Commission involving the amount of franchise tax due from the company for each of the fiscal years 1965–66, 1966–67, and 1967–68.

The tax in question is levied by Section 1203 of the "Oklahoma Franchise Tax Code" of 1963, now appearing as 68 O.S. 1971 § 1203. Admittedly, the corporation is one of the domestic business organizations subject to the provisions of that statute.

Before computing the amount of franchise tax to be paid (and actually paid) with its annual franchise tax return for each of those years, the company deducted, from the amount of its capital as stated in the return, its valuation of certain Oklahoma Turnpike Authority bonds owned by it. Without questioning the value of the bonds, the Tax Commission computed the total amount of the franchise tax for each year on the basis of the stated amount of capital without the claimed deduction, and assessed an additional amount as the unpaid balance of the tax computed on that basis.

The company filed a protest against each assessment, contending that the franchise tax in question is an ad valorem tax levied upon the taxpayer's assets constituting its "capital" as that term is used in the statute and, when applied to the value of a taxpayer's Oklahoma Turnpike Authority bonds, results in taxation of those bonds contrary to the provision in Section 14 of the Oklahoma Turnpike Act (69 O.S.1961, § 664, now appearing as 69 O.S.1971 § 1714) that:

> " * * * the bonds issued under the provisions of this Article, their transfer and the income therefrom (including any profit made on the sale thereof) shall at all times be free from taxation within the State. * * *."

After a hearing on those protests, the Tax Commission entered an order denying

Blackstock, Joyce & Pollard by Charles S. Chapel, Tulsa, for appellant.

Albert D. Lynn, E. J. Armstrong, Mike Tapp, E. B. Lee, Oklahoma City, for appellee, Oklahoma Tax Comm.

the protests, and the additional assessments became effective. The company paid the amounts so assessed and appealed to this court as provided for in the statutes now appearing as 68 O.S.1971, §§ 221 and 225.

The only issue presented in the appeal concerns the applicability, or non-applicability, of the above-quoted provision of the Turnpike Authority Act with respect to the tax in question.

The answer depends upon whether the tax is levied upon any one or more of three separate and distinct things: (a) assets which include such bonds, or (b) income from such assets, or (c) the transfer of such assets. First National Bank and Trust Company of Tulsa et al. v. Oklahoma Tax 'Commission (1968), Okl., 447 P.2d 441, 443. If the tax is not levied upon one of those three things, that tax-exemption provision does not apply with respect to the tax. If it is so levied, the exemption applies.

The parties tacitly concede that the franchise tax in question is not levied upon any transfer of any property or assets (as was the estate tax involved in the case just cited), and is not levied upon any income from property or assets. They also tacitly concede that Oklahoma Turnpike Authority bonds purchased with capital assets of a domestic corporation or other business organization subject to the provisions of Section 1203 of the Franchise Tax Code would constitute a part of the "capital" of the organization as that term is defined and used in that code.

Thus, the basic question presented herein is whether, as contended by the taxpayer, the franchise tax levied by Section 1203 of the Franchise Tax Code is levied upon the property which constitutes the "capital" of the taxpayer. That statute provides:

"There is hereby levied and assessed a franchise or excise tax upon every corporation, association, joint stock company, common law or statutory trust, and other business organizations, as defined in Section 1201 of this Code, organized under the laws of this State, equal to One Dollar and Twenty-five cents ($1.-25) for each One Thousand Dollars ($1,000.00) or fraction thereof of *the amount of capital* used, invested or employed in the exercise of any power, privilege or right inuring to such organization, within this State; it being the purpose of this section to require the payment of the State of Oklahoma this tax *for the right granted by the laws of this State* to exist as such organization and enjoy, under the protection of the laws of this State, the powers, rights, privileges and immunities derived from the State by reason of the form of such existence." (Emphasis supplied)

First of all, we point out that the provisions of the Oklahoma Constitution concerning direct "taxes" on property, on an ad valorem basis, are contained in Sections 6, 6A, 8, 9, 9A, 9B, 10, 10A, 12A, 26, 27, and 35, of Article 10, and Sections 1 and 2 of Article 12–A, thereof. They authorize the levying of such taxes for county, city, town, and school district purposes, and provide certain exemptions therefrom. Section 9 of Article 10 contains a provision that:

"No ad valorem tax shall be levied for State purposes, nor shall any part of the proceeds of any ad valorem tax levy upon any kind of property in this State be used for State purposes."

The tax imposed by Section 1203 of the Franchise Tax Code is levied, expressly, for State purposes (Section 1208). If construed as a tax levied upon property on an ad valorem basis, as contended for by the company, the statute would be violative of the quoted provision of Section 9 of Article 10.

■ If possible, we must construe the statute so that it will be constitutional instead of unconstitutional. Section 12 of Article 10 of the Constitution expressly authorizes the Legislature to provide for the levy and collection of "specific taxes," including "license," "franchise," and "excise" taxes.

This court has not heretofore had to determine whether or not the tax levied by Section 1203, supra, or by a substantially similar statute, was a tax levied upon property, ad valorem or otherwise. However, it has passed upon the question of whether or not some other state taxes were taxes on property—"property taxes." Those cases arose because a county, city, or religious and/or charitable organization claimed exemption from the particular tax under the tax-exemption provisions of Section 6 of Article 10 of the Constitution. In each case, this court held that the tax-exemption applied only with respect to "property taxes," and that the tax in question was not a "property tax" but was an "excise tax."

See: In re City of Enid (1945), 195 Okl. 365, 158 P.2d 348; City of Ardmore v. State of Oklahoma ex rel. Oklahoma Tax Commission (1934), 168 Okl. 316, 32 P.2d 728; Board of Commissioners of McClain County et al. v. Oklahoma Tax Commission (1939), 185 Okl. 625, 95 P.2d 605; Oklahoma Tax Commission v. Sisters of Sorrowful Mother (1939), 186 Okl. 339, 97 P.2d 888; Application of Baptist General Convention of Oklahoma et al. (1945), 195 Okl. 258, 156 P.2d 1018; City of Claremore v. Oklahoma Tax Commission (1946), 197 Okl. 223, 169 P.2d 299.

In the City of Enid case, this court discussed, at some length, the distinction between "property taxes" and "excise taxes" or "excises" as pointed out in opinions from a number of other jurisdictions. Some of the statements are that a "property tax" is levied directly on the property itself; that the necessity of paying such a tax falls upon the owner of particular property merely because he is the owner, regardless of the use or disposition made of the property; that an "excise tax" is a tax imposed on performance of an act, engaging in an occupation, or enjoyment of a privilege; that the obligation to pay an "excise tax" is based upon voluntary action of the person taxed in performing the act, engaging in the occupation, or enjoying the privilege, which is the subject of the excise, and the element of absolute and una-voidable demand, as in the case of a "property tax," is lacking. And, in the first paragraph of its syllabus to that case, the court held that:

"A declaration in a statute providing for the levy and collection of a sales tax that the tax thereby imposed is an excise tax, must be accepted unless the declaration is incompatible with the effect of the statute."

 That rule is just as applicable to the declaration in Section 1203 of the Franchise Tax Code that the tax thereby levied is "a franchise or excise tax." And, that declaration is compatible with the provisions of the same section that the tax is levied upon each of the organizations described therein, in payment for the right, granted by the laws of this state, to exist as such an organization and enjoy the powers, rights, privileges and immunities derived from the state by reason of the form of its existence.

Except for the fact that the tax is levied on a fiscal-year basis and the amount of the tax, if any becomes due with respect to a particular fiscal year, depends upon and is measured by the amount, in dollars, of certain assets of the organization, those provisions of Section 1203, and the other pertinent provisions of the code, are wholly incompatible with the concept of "property taxes."

The tax is levied for state purposes, and is payable to the Oklahoma Tax Commission. Although it is levied on a fiscal-year basis, it is not levied for the fiscal year during which the organization pays an incorporating, qualifying or filing fee or tax to the Secretary of State. If the tax for any fiscal year is not paid before it becomes delinquent, the Tax Commission may enter an order directing the suspension of the charter or other instrument of organization under which the taxpayer was organized and the forfeiture of all corporate or other rights inuring thereunder. The delinquent tax, and penalty thereon, is collectible in the same manner as other state taxes payable to the Tax Commission.

The exercise of any of the rights, privileges or powers of any such domestic organization, without payment of the tax constitutes a misdemeanor. The amount of capital used, invested or employed in the exercise of any of such powers, rights, or privileges within this state is involved in, but only in, the computation of the amount of the tax payable for any fiscal year with respect to which an organization elects to exercise any of those powers, rights or privileges within this state. The amount of capital involved is not the subject of the tax, but is the yardstick by which the amount of the tax is measured.

The tax imposed by Section 1203 of the Franchise Tax Code is a franchise or excise tax, levied upon each of the organizations described in that section, in payment for the privilege of exercising and enjoying the rights, powers, privileges and immunities mentioned therein, and is only measured by the amount of capital used, invested or employed in the exercise of any of such rights, powers or privileges.

This view is in harmony with the statement in Great Lakes Pipe Line Company v. Oklahoma Tax Commission (1951), 204 Okl. 518, 523, 231 P.2d 655, 661, concerning the 1941 "Oklahoma Corporation License Law" (68 O.S.1941, §§ 634–643) which was repealed by the 1949 act that became our present "Franchise Tax Code":

" * * * It is measured by the amount of capital used, invested, or employed in Oklahoma. In our opinion it is a tax levied on a corporation for its right to exist in Oklahoma, and as a prerogative [prerequisite?] to the right of exercising its corporate functions in this state. * * *."

It is also in harmony with this court's analysis of the same Section 1203 involved herein, in Personal Loan & Finance Company of Capitol Hill v. Oklahoma Tax Commission et al. (1968), Okl., 437 P.2d 1015. That case involved an assessment of additional tax based upon the taxpayer-corporation's having deducted from the amount of its capital the amount of its loan obliga-

tions to its parent corporation, in spite of a provision in subsection (b) of Section 1209 precluding such a deduction for advances between parent and subsidiary organizations. The issue of law presented was whether or not that provision constituted an unconstitutional classification of "subjects" of the tax. In answering that question in the negative, this court first analyzed the statute as follows:

" * * * Title 68 O.S.Supp.1963, § 12–1203, renumbered Title 68 O.S.Supp. 1965, § 1203, *levies and assesses a franchise or excise tax upon the taxpayer* equal to $1.25 for each $1000 'of the amount of capital used, invested or employed in the exercise of any power, privilege or right inuring to' it, within this State and requires payment of the tax for the right to exist as a corporation and enjoy under the protection of the State the powers, rights, privileges and immunities derived from the State. * * *." (Emphasis supplied)

Especially in view of that analysis of the statute, it is reasonably clear that subsequent statements in the opinion, to the effect that the statute levies a "franchise tax" upon the amount of capital used, invested or employed in Oklahoma, were not *intended to characterize the tax as a* "property tax" levied upon capital of such an organization.

Contrary to the corporation's contention herein, the case of In re Oklahoma National Life Insurance Company (1918), 68 Okl. 219, 173 P. 376, did not involve a predecessor of Section 1203 of the present franchise tax code. It involved an early predecessor of Section 2432 of the present ad valorem tax code, and does not support the corporation's contention that the franchise tax is levied upon the property and assets of the affected organizations according to the value thereof.

█ The tax levied by Section 1203 of the Franchise Tax Code is not levied upon assets constituting the "capital" of the business organizations mentioned in that statute, or upon the transfer of any such

assets, or upon income from any such assets. Consequently, the tax-exemption provision of Section 14 of the Oklahoma Turnpike Act does not apply with respect to such tax and require that the value of bonds issued under the provisions of that act be deducted from the amount of the taxpayer's capital before computing the amount of the tax due from the taxpayer.

The Oklahoma Tax Commission's order involved in this appeal is affirmed.

DAVISON, V. C. J., and JACKSON, IRWIN and BARNES, JJ., concur.

BERRY, C. J., and WILLIAMS and HODGES, JJ., dissent.

### ON REHEARING

JACKSON, J., dissents to majority opinion and SIMMS, J., concurs in majority opinion.

Rehearing denied.

WILLIAMS, J., permitted to withdraw former dissenting opinion and promulgate revised dissenting opinion.

WILLIAMS, Justice (dissenting):

Under § 14 of the Oklahoma Turnpike Act (69 O.S.1971, § 1714) "* * * the bonds issued under the provisions of this Article, their transfer and the income therefrom (including any profit made on the sale thereof) shall at all times be free from taxation within the State."

The word "taxation" in this section is not qualified or limited in any way, and there can be no doubt as to what it means. In First Nat. Bk. & Tr. Co. of Tulsa v. Oklahoma Tax Commission, Okl., 447 P.2d 441 (1968) we said that § 14 creates "an exemption from *all forms of taxation, without any limitation as to the type or character of the taxes,* for three separate and distinct things: (a) the bonds themselves, and (b) income from the bonds, including (but not limited to) any profit made on the sale thereof, and (c) any 'transfer' of the bonds." (Emphasis supplied).

In my view, the particular name given to the tax herein, classifying it as to form or type or character, is immaterial, and the paramount consideration is that the tax is "measured" by the value of the bonds. That being true, it can no longer be said that these turnpike bonds are "free from taxation within the State." Rather, it is felt they are specifically, even if indirectly, taxed.

Similarly, it is viewed as immaterial that 68 O.S.1971, § 1203 levies the franchise or excise tax upon "every corporation * * *" instead of upon the bonds. As a practical matter, the ultimate fact is that every tax is levied upon the taxpayer. Note that in *First National*, quoted above, we said that § 14 creates an exemption from taxation "for three * * * things" and not upon three things. The difference in choice of prepositions is a matter of semantics. It was immaterial in *First National* and is believed to be immaterial here.

In connection with the suggested conclusion in this case that the franchise tax is levied upon the organization itself and not upon "the assets constituting the 'capital'", it is believed a more realistic appraisal of § 1203 is to be found in Personal Loan & Finance Co. v. Oklahoma Tax Commission, Okl., 437 P.2d 1015, 1019 (1968). In that case (not precisely in point) we said of § 1203 of the Franchise Tax Code at pg. 1019 "* * * the evident intent of the Legislature being that capital used, invested or employed within this State be subjected to the tax." At another place on the same page we said "Under the provisions of § 1203, supra, the Legislature levied a franchise tax on the amount of capital used, invested and employed by domestic corporations in Oklahoma." I am unable to reconcile the statements in *Personal Loan* that "capital * * * invested * * * be subjected to the tax" and that the franchise tax is "on the amount of capital * * * invested" with the conclusion here suggested that the tax "is not levied upon assets constituting the 'capital'."

Further, it is believed to be immaterial that the stated purpose of § 1203 is to require the payment of a franchise tax "for the right granted by the laws of this State to exist * * *," as a corporation with corporate rights, privileges and immunities. The exemption granted by § 14 of the Turnpike Act is not conditioned upon the purpose for which the tax is levied. In view of the clear and unambiguous language of § 14, it can hardly be said that an exemption from taxation for one purpose was intended but that an exemption from taxation for another purpose was not.

There is another, and perhaps more basic, reason why I must respectfully dissent. In my view, § 14 of the Turnpike Act, and § 1203 of the Franchise Tax Code, when construed together, as herein suggested, amount to a violation of the second sentence of Article 10, Section 5, of the Oklahoma Constitution, which provides that "Taxes shall be uniform upon the same class of subjects."

In Power, Inc. v. Huntley, 39 Wash.2d 191, 235 P.2d 173 (1951) the Washington Supreme Court considered attacks upon the constitutionality of a strikingly similar statute and held that it violated the uniformity clause of the Washington Constitution, which provides that "All taxes shall be uniform upon the same class of property * * *." Note that the Oklahoma uniformity clause is even broader than the Washington clause, *not being limited to property taxes.*

In that case, the Washington Supreme Court considered "An Act * * * imposing an excise tax upon corporations * * *" which provided in § 7 that the affected corporation "* * * for the privilege of exercising its corporate franchise in this state or for the privilege of doing business in this state, shall annually pay to the state, in addition to annual license fees, an excise tax according to, or measured by, its net income equal to four per cent of such net income * * *."

One of the attacks made upon the constitutionality of the tax was that, since it was not levied upon competing businesses of the same kind owned by individuals or partnerships, the uniformity clause was violated. Because the Washington uniformity clause is limited to property taxes the court first held that "income" is "property". As to the argument that the tax was a franchise or excise tax and not a property tax, the court quoted language from an earlier decision to the effect that "* * * the legislative body cannot change the real nature and purpose of an act by giving it a different title or by declaring its nature and purpose to be otherwise, any more than a man can transform his character by changing his attire or assuming a different name." The court then said "We have no hesitancy in saying that an analysis of the present act convinces us that the tax is a mere property tax 'masquerading as an excise'."

In summarizing its holding near the end of the opinion, the Washington Court said:

"The so-called 'corporate excise tax' is in truth and fact not an excise tax but a tax on property, i. e., income, and, as the property of corporations may not be subjected to a tax not imposed upon the property of competing copartners and individuals, it violates the uniformity provision of our state constitution."

Keeping in mind that the Oklahoma uniformity clause is not limited to ad valorem or property taxes, and paraphrasing the language of the Washington court, it is my view that the franchise tax of construction suggested in this case is in truth and fact a tax upon turnpike bonds and, as the same tax is not imposed upon turnpike bonds in the hands of individuals or copartnerships, the uniformity clause of the Oklahoma Constitution is violated.

Of course if the value of the turnpike bonds is deducted from the "amount of capital * * * invested" before the tax is computed, there is no violation of the uniformity clause. On a related question this Court said in In re Assessment of First

Nat. Bank, 58 Okl. 508, 160 P. 469 (1916), L.R.A.1917B, 294:

"Where the tax is in fact laid upon the franchise of a corporation, although measured by the amount of its capital stock, the manner in which the capital is invested is not material. But if the tax is really upon the property or assets of the corporation, as represented by its capital, allowance must be made for such portion of the capital as is invested in nontaxable property."

In my view, these sections of the statutes, construed as suggested, also amount to a violation of the clauses of state and federal constitutions prohibiting the state from impairing the obligation of contracts. In 1916 in In re Assessment of First Nat. Bank, supra, this Court considered certain public building bonds declared by the statute to be "non-taxable for any purpose." In paragraphs 7, 8 and 9 of the syllabus, this Court held:

"The intention of the Legislature to exempt the bonds from taxation being indubitable, the right to tax such bonds, whether directly or in legal effect, can be exercised under no circumstances, and is not therefore dependent upon the character of the owner or the statute under which the tax is assessed.

"State public building bonds issued and sold pursuant to the act of March 15, 1911, and which by the terms of the act, as well as by express recital in the bonds, are made nontaxable, constitute a binding contract between the holder of such bonds and the state, which the latter under the guise of taxation may not constitutionally impair.

"The constitutional inhibition, both state and federal, against impairing contract obligations, is a limitation upon the taxing power, as well as all legislation, whatever form it may take."

I believe that the phrase "free from taxation", as applied to turnpike bonds in § 14 of the Oklahoma Turnpike Act, is just as broad and comprehensive as the phrase "nontaxable for any purpose" in the statute considered in the above case, and that the legislative intention is just as "indubitable". If this is true, the bonds cannot be constitutionally taxed regardless of "the character of the owner or the statute under which the tax is assessed."

In my view, any tax law of this state which has the effect of increasing the tax burden of any taxpayer because he owns turnpike bonds is unconstitutional as an impairment of the obligation of the purchase contract.

The holding of the United States Supreme Court in Macallen Co. v. Massachusetts, 279 U.S. 620, 49 S.Ct. 432, 73 L.Ed. 874, 65 A.L.R. 866, appears to me to be controlling in the situation now before us, at least as regards the impairment clause of the United States Constitution.

The controversy in that case concerned the state's right to tax the interest received on both federal and state bonds. The Massachusetts statute in effect when the bonds were sold did not tax the interest, or income, from the bonds. After they were sold, Massachusetts enacted, or amended, a statute taxing domestic corporations "with respect to the carrying on or doing of business". Under that statute, similar to the franchise tax involved in the case now before us, the tax was "measured" by a formula which included net income; and "net income" was defined in such a way as to include the interest on the federal and state bonds.

Obviously, with regard to the federal bonds involved, the "subject" of the tax in that case—the interest or income from the bonds—was not the same as the "subject" in this case—the turnpike bonds themselves. Nevertheless, the principal argument raised by the Attorney General of Massachusetts with regard to the taxability of the "subject" there involved was substantially the same as the principal argument here, with regard to the "subject" here involved. It was to the general effect that the tax in question was not a tax on a nontaxable subject—income from the bonds—but was merely " * * · * an excise laid

upon Massachusetts business corporations for the privilege of doing business, *measured* * * * in part by the net income of each such corporation for the year preceding that during which the privilege was enjoyed." (Emphasis supplied). He made the same argument specifically with respect to the state bonds involved. See the summary of the arguments at 73 L.Ed., page 876, or 65 A.L.R. page 868.

In evaluating that argument, the United States Supreme Court used language that is particularly appropriate here. After noting the "carefully drawn" opinion of the Supreme Judicial Court of Massachusetts holding that the tax was not a tax upon income but an excise " 'with respect to the carrying on or doing of business' " (264 Mass. 396, 163 N.E. 75), the United States Supreme Court said:

" * * * neither state courts nor Legislatures, by giving a tax a particular name, or by using some form of words, can take away our duty to consider its nature and effect. [citations]. And this court must determine for itself by independent inquiry whether the tax here is what, in form and by the decision of the state court, it is declared to be, namely, an excise tax on the privilege of doing business, or, under the guise of that designation, is in substance and reality a tax on the income derived from tax-exempt securities. If by varying the form —that is to say, if, by using one name for a tax instead of another, or imposing a tax in terms upon one subject when another is in reality aimed at—the substance and effect of the imposition may be changed, constitutional limitations upon powers of taxation would come to naught."

After citing various cases in which the United States Supreme Court had held that a tax laid "in terms" upon one subject was in effect a tax upon another (nontaxable) subject and therefore unconstitutional, the Court in *Macallen* quoted the familiar statement of Justice Marshall in the historic case of McCulloch v. Maryland, 4 Wheat. 316, 431, 4 L.Ed. 579, 607, that " 'the power to tax involves the power to destroy,' " and said:

" * * * These constitute . . . compelling reasons why courts, in scrutinizing taxing acts like that here involved, should be acute to distinguish between an exaction which in substance and reality is what it pretends to be, and a scheme to lay a tax upon a nontaxable subject by a deceptive use of words. The fact that a tax ostensibly laid upon a taxable subject is to be measured by the value of a nontaxable subject at once suggests the probability that it was the latter rather than the former that the law-maker sought to reach."

We have noted that in *Macallen*, both federal bonds (United States Liberty Bonds; Federal Farm Loan Bonds) and state, county and municipal bonds were involved. As to the federal bonds, other constitutional limitations, in addition to the impairment clause, were also applicable and discussed in the opinion of the Court. As to the state bonds, the Court noted that "The corporation also owned a large number of bonds of Massachusetts counties and municipalities which, when issued and acquired by the corporation, were exempt from taxation by the terms of a state statute." The Court held the taxing statute unconstitutional as to both federal and state bonds, saying that " * * * as to the latter, the act *impairs the obligation of the statutory contract* of the state by which such bonds were made exempt from taxation." (Emphasis supplied).

The state bonds involved in *Macallen* were made tax exempt by virtue of Mass. Gen.Laws Ann., Ch. 59, § 5, paragraph 25, which extended the exemption to "Bonds or certificates of indebtedness of the commonwealth issued since January first, nineteen hundred and six, and bonds, notes and certificates of indebtedness of any county, city, town * * * in the commonwealth,

issued on or after May first, nineteen hundred and eight, stating on their face that they are exempt from taxation in Massachusetts." Note that as to the state bonds in *Macallen,* as in the case now before us, the "nontaxable subject" was the bonds themselves, and not merely the income therefrom. In my view, the language of the tax exemption in the Oklahoma Turnpike Act—"at all times free from taxation in the State"—is even stronger than the language in the Massachusetts statute.

It is fair to say that the United States Supreme Court used some rather blunt language in *Macallen* with regard to the motives of the Massachusetts Legislature. I most assuredly do not ascribe similar motives to our Legislature, or to the opinion of the majority in this case.

The basis of this dissent, as to the impairment question, goes to the ascertainment of the intention of our Legislature in enacting the Oklahoma Franchise Tax Code. I cannot believe that in enacting a *general* franchise tax code without repealing the very *specific* tax exemption contained in the Oklahoma Turnpike Act, our Legislature actually intended that tax exempt turnpike bonds should be used as a basis to "measure" the amount of the tax.

A later United States Supreme Court decision is helpful in the situation now before us by way of illustration. See J. D. Adams Manufacturing Company v. Storen et al., 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365, 117 A.L.R. 429. That case involved, among other things, the question of whether the application of a gross income tax to the interest received from municipal bonds amounted to a violation of the impairment clause of the United States Constitution. The bonds themselves had previously been exempt from taxation. In that case the Court concluded that there was no violation of the impairment clause and sustained the tax. The holding was plainly based upon a conclusion that the original exemption in that case extended only to ad valorem taxation, upon the bonds themselves, and this conclusion was supported by the fact that the exemption statute was an integral part of the tax code dealing with property or poll taxes.

The same cannot be said in the case now before us. The broad and comprehensive tax exemption in this case is contained in an entirely separate statute—the Oklahoma Turnpike Act—which has not been repealed. It is an exemption "from all forms of taxation without any limitation as to the type or character of the taxes." I agree with the majority that the franchise tax here need not be denominated an ad valorem tax, but I think that circumstance is immaterial because of the broad language of the exemption in the Oklahoma Turnpike Act.

I cannot escape the conclusion that the opinion of the majority in this case necessarily rests upon an unrecognized premise that our Legislature, "by using one name for a tax instead of another," intended to place a tax upon a nontaxable subject. I would not ascribe such an intention to our Legislature.

In a proper case, this Court has the same duty as the United States Supreme Court to enforce federal constitutional limitations. See Article 1, Section 1; and Article 15, Section 1, Oklahoma Constitution.

I respectfully dissent.

I am authorized to state that Mr. Justice JACKSON concurs in the views herein expressed.